**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

In re                                                  :        Chapter 11
                                                       :
EnviroSolutions of New York, LLC, <u>et al.</u>,[1]     :        Case No. 10-11236 (SMB)
                                                       :
                          Debtors.                     :        Jointly Administered

---------------------------------------------------------x

## INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) AND 507 AND FED. R. BANKR. P. 2002, 4001 AND 9014: (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING DEBTORS TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS; AND (IV) SCHEDULING A FINAL HEARING <u>PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u>

Upon the motion, dated March 10, 2010 (the "<u>Motion</u>"), of EnviroSolutions Real

Property Holdings, Inc. ("<u>ESRPH</u>") and its affiliated debtors, each as debtor and debtor in

possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Cases</u>") commenced

on March 10, 2010 (the "<u>Petition Date</u>"), for interim and final orders under sections 105, 361,

362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States

Code, 11 U.S.C. §§ 101, <u>et seq.</u> (as amended, the "<u>Bankruptcy Code</u>"), and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "<u>Bankruptcy Rules</u>"),

---

[1] The last four digits of the taxpayer identification numbers of the Debtors follow in parentheses: (i) 9304 D'Arcy, LLC (9577); (ii) Advanced Enterprises Recycling, Inc. (9105); (iii) Ameriwaste, LLC (6130); (iv) Ashland Investments, LLC (7823); (v) Big Run Coal and Clay Company, Inc. (3540); (vi) BR Landfill, LLC (9154); (vii) BR Property Holdings, Inc. (2700); (viii) Capels Landfill, LLC (8598); (ix) Curtis Creek Recovery Systems, Inc. (9429); (x) Doremus Ave Recycling and Transfer, LLC (3439); (xi) EnviroSolutions Holdings, Inc. (4890); (xii) EnviroSolutions Leasing, LLC (8801); (xiii) EnviroSolutions Logistics, LLC (9595); (xiv) EnviroSolutions of New York, LLC (7737); (xv) EnviroSolutions Real Property Holdings, Inc. (9014); (xvi) EnviroSolutions, Inc. (8726); (xvii) ETW, LLC (0832); (xviii) Furnace Associates, Inc. (3247); (xix) Potomac Disposal Services of Virginia, LLC (9877); (xx) Potomac Disposal Services of Virginia Real Property Holdings, LLC (7998); (xxi) River Cities Disposal, LLC (3920); (xxii) Solid Waste Transfer and Recycling, Inc. (6151); and (xxiii) STI Roll-Off, LLC (7081). The Debtors' executive headquarters' address is 11220 Asset Loop, Suite 201, Manassas, VA, 20109.

and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), seeking:

(I)     authorization (a) for ESRPH and each of its Debtor-subsidiaries (collectively, the "Borrowers") to obtain up to $30,000,000 in aggregate principal amount of postpetition financing (the "DIP Financing"), with a letter of credit sublimit of $20,000,000, on the terms and conditions set forth in this interim order (this "Order") and that certain Credit Agreement (substantially in the form annexed to the Motion as Exhibit A, and as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Agreement";[2] and, collectively with all agreements, guaranties, collateral agreements, documents and instruments delivered or executed from time to time in connection therewith, including without limitation the Budget (as defined in the DIP Agreement), as hereafter amended, supplemented or otherwise modified from time to time, the "DIP Documents"), among the Borrowers, EnviroSolutions Holdings, Inc., a Delaware corporation ("Holdings") and the other Guarantors (as defined below), Deutsche Bank Trust Company Americas ("DBTCA"), as Administrative Agent and Collateral Agent (in such capacity, the "DIP Agent") for itself and such other financial institutions that may become a party thereto from time to time (collectively, the "DIP Lenders"), and (b) for each of the Debtors, other than the Borrowers (the "Guarantors"), jointly and severally to guaranty on a secured basis the Borrower's obligations in respect of the DIP Financing;

(II)     authorization for the Debtors to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement.

(III)     authorization for the Debtors to (a) use the Cash Collateral (as defined in paragraph 11 below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 3(b) below) and (b) provide adequate protection to the counterparties under any Interest Rate Agreement or Commodity Hedging Agreement (each as defined in the Prepetition Credit Agreement referred to below) and the lenders (the "Prepetition Secured Lenders," and, collectively with such counterparties, the "Prepetition Secured Parties") under the Amended and Restated Credit Agreement, dated as of July 7, 2005 (as amended, supplemented or otherwise modified from time to time, the "Prepetition Credit Agreement"; and together with any other mortgage, security, pledge, control or guaranty agreements and all other documentation executed in connection with the foregoing, each as amended, supplemented or otherwise modified, the "Prepetition Loan Documents"), among Envirosolutions Real Property Holdings, Inc., Potomac Disposal Services Of Virginia Real Property Holdings, LLC, Furnace Associates, Inc., Capels Landfill, LLC, BR Landfill, LLC, River Cities Disposal, LLC, Big Run Coal and Clay Company, Inc., Ashland Investments, LLC and BR Property Holdings, Inc. and certain of their respective subsidiaries (collectively, the "Prepetition Obligors"), Deutsche Bank Trust Company Americas, as Administrative Agent (in such capacity, the "Prepetition Agent"), and the Prepetition Secured Lenders;

(IV)     authorization for the DIP Agent to accelerate the Loans and terminate the Commitments under the DIP Agreement upon the occurrence and continuance of an Event of Default, subject to the terms hereof;

(V)     subject to entry of the Final Order (as defined below), authorization to grant liens to the DIP Lenders on the proceeds of the Debtors' claims and causes of action (but not on the actual claims and causes of action) arising under sections 544, 545, 547, 548, 549 and 550 of the

022537-0172-13730-Active.11906312.7                                        03/16/2010 9:30 AM

Bankruptcy Code (collectively, the "<u>Avoidance Actions</u>"), which constitutes a "Material Provision" (a "<u>Material Provision</u>") under Local Rule 4001-2;

(VI)    subject to entry of the Final Order, the waiver by the Debtors of any right to seek to surcharge the DIP Collateral (as defined in paragraph 7 below) pursuant to section 506(c) of the Bankruptcy Code or any other applicable law or principle of equity, which grant constitutes a Material Provision;

(VII)    authorization to deem all letters of credit issued under the Prepetition Credit Agreement (the "<u>Prepetition L/Cs</u>") to be Letters of Credit under the DIP Agreement pursuant to section 364 of the Bankruptcy Code, which constitutes a Material Provision;

(VIII)    at an interim hearing (the "<u>Interim Hearing</u>") on the Motion before this Court, pursuant to Bankruptcy Rule 4001, entry of this Order (a) authorizing the Borrowers, on an interim basis, to borrow under the DIP Agreement an aggregate principal amount, together with issued Letters of Credit, not to exceed $20,000,000 at any time outstanding prior to the entry of the Final Order, (b) authorizing the Debtors to use the Cash Collateral and the other Prepetition Collateral, and (c) granting adequate protection to the Prepetition Secured Parties; and

(IX)  to schedule, pursuant to Bankruptcy Rule 4001, a final hearing (the "<u>Final Hearing</u>") for this Court to consider entry of a final order in form and substance reasonably satisfactory to the DIP Agent (the "<u>Final Order</u>") authorizing and approving on a final basis the relief requested in the Motion, including without limitation, for the Borrowers on a final basis to utilize the DIP Financing and for the Debtors to continue to use the Cash Collateral and the other Prepetition Collateral subject to the terms of the DIP Documents and the Final Order.

The Interim Hearing having been held by this Court on March 12, 2010, and upon the record made by the Debtors at the Interim Hearing, including, without limitation, the

admission into evidence of the Affidavit of Marc L. Bourhis, Chief Financial Officer of

EnviroSolutions Holdings, Inc. and Vice President of the Debtors, in Support of Chapter

11 Petitions and First Day Pleadings, filed on the Petition Date, and the other evidence

submitted or adduced and the arguments of counsel made at the Interim Hearing and after

due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Notice of the Motion, the relief requested therein and the Interim Hearing

was served by the Debtors as set forth in the Affidavit of Service re: Documents Served on

March 11, 2010, dated March 12, 2010 [Docket No. 25].  Under the circumstances, the Debtors

believe that the notice provided of the Motion, the relief requested therein and the Interim

Hearing constitutes the best available notice and that no further notice of the relief sought at the

Interim Hearing is necessary or required.

3.      *Debtors' Stipulations*.  Subject to the limitations contained in paragraphs 17 and

18 below, the Debtors admit, stipulate, and agree that:

(a)      as of the Petition Date, the Prepetition Obligors were truly and justly

indebted and liable to the Prepetition Secured Parties, without objection, defense, counterclaim

or offset of any kind, (i) in the aggregate principal amount of not less than $193,991,360 in

respect of loans made under the Prepetition Credit Agreement, (ii) $12,504,204 in undrawn

available amounts under letters of credit issued pursuant to the Prepetition Credit Agreement

plus amounts owed under Interest Rate Agreements or any Commodity Hedging Agreement with

5

the counterparties to such agreements, accrued and unpaid interest, any cash management obligations owed to any Prepetition Secured Party, all other "Obligations" (as defined in the Prepetition Credit Agreement) and fees and expenses (including fees and expenses of attorneys and advisors) as provided in the Prepetition Loan Documents, the Interest Rate Agreements and Commodity Hedging Agreement (collectively, the "Prepetition Obligations");

(b)     the liens and security interests granted to the Prepetition Agent to secure the Prepetition Obligations are (i) valid, binding, perfected, enforceable, first priority (subject to permitted exceptions under the Prepetition Credit Agreement) liens on and security interests in the personal and real property constituting "Collateral" under, and as defined in, the Prepetition Loan Documents in respect of the Prepetition Obligations (together with the Cash Collateral, the "Prepetition Collateral"), (ii) not subject to objection, defense, counterclaim, offset, contest, attachment, avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and (iii) subject and subordinate only to (A) after giving effect to this Order, the Carve Out (as defined in paragraph 6(b) below) and the liens and security interests granted to secure the DIP Financing and the Adequate Protection Obligations (as defined in paragraph 13 below), and (B) valid, perfected and unavoidable liens permitted under the Prepetition Loan Documents to the extent such permitted liens are senior to the liens securing the Prepetition Obligations (the "Permitted Prepetition Liens");

(c)     the Prepetition Obligations constitute the legal, valid and binding obligations of the Prepetition Obligors, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising under section 362 of the Bankruptcy Code);

(d)     (i) no portion of the Prepetition Obligations shall be subject to objection, defense, counterclaim, offset, avoidance, recharacterization, recovery or subordination pursuant

to the Bankruptcy Code or applicable nonbankruptcy law, and (ii) the Prepetition Obligors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses, setoff or recoupment rights, whether arising under the Bankruptcy Code or applicable nonbankruptcy law, against the Prepetition Agent, the Prepetition Secured Parties and their respective affiliates, subsidiaries, agents, officers, directors, employees, attorneys and advisors; and

(e)     a portion of the Debtors' cash, including without limitation, all cash and other amounts from time to time on deposit or maintained by the Debtors in any account or accounts with any Prepetition Secured Lender and any cash proceeds of the disposition of any Prepetition Collateral, constitutes proceeds of the Prepetition Collateral and, therefore, is cash collateral of the Prepetition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral").

4.     *Findings Regarding the DIP Financing.*

(a)     Good cause has been shown for the entry of this Order.

(b)     The Debtors have an immediate need to obtain the DIP Financing and to use the Prepetition Collateral, including the Cash Collateral, in order to, among other things, permit the orderly continuation of their businesses, preserve the going concern value of the Debtors, and satisfy payroll obligations and other working capital and general corporate purposes of the Debtors.   The Debtors' use of the Prepetition Collateral (including the Cash Collateral) is necessary to ensure that the Debtors have sufficient working capital and liquidity to preserve and maintain the going concern value of the Debtors' estates.   Further, Prepetition L/Cs should be deemed to be Letters of Credit under the DIP Agreement in order to, among other things, avoid additional debt and leverage on the Debtors and to permit the Debtors to maintain such obligations as contingent obligations, which maximizes the value of the Debtors' estates.

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense. The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting (i) the priming DIP Liens (as defined in paragraph 7 below) and (ii) the Superpriority Claims (as defined in paragraph 6(a) below), in each case on the terms and conditions set forth in this Order and the DIP Documents.

(d)     The terms of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) pursuant to this Order are fair and reasonable and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

(e)     The DIP Documents and the terms and conditions of the Debtors' use of the Prepetition Collateral (including the Cash Collateral) have been the subject of extensive negotiations conducted in good faith and at arm's length among the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Agent and the informal steering committee of Prepetition Secured Lenders, and all of the Debtors' obligations and indebtedness arising under or in connection with the DIP Financing, including without limitation, (i) all Loans made to, and all Letters of Credit issued for the account of, the Debtors pursuant to the DIP Agreement and (ii) all other obligations (including, without limitation, indemnification and fee obligations) of the Debtors under the DIP Documents and this Order now or hereafter owing to the DIP Agent or any DIP Lender (collectively, the "DIP Obligations"), shall be deemed to have been extended by the DIP Agent and the DIP Lenders in "good faith" as such term is used in section 364(e) of the Bankruptcy Code, and in express reliance upon the protections set forth therein, and shall be

8

entitled to the full protection of section 364(e) of the Bankruptcy Code, in the event that this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

(f)      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2). Absent the interim relief set forth in this Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and the use of the Prepetition Collateral (including the Cash Collateral) in accordance with this Order and the DIP Documents are, therefore, in the best interest of the Debtors' estates.

5.      *Authorization Of The DIP Financing And The DIP Documents.*

(a)      The Debtors are hereby authorized to enter into and perform their obligations under the DIP Documents and, in the case of the Borrower, to borrow or request issuance of Letters of Credit under the DIP Agreement (and deem the Prepetition L/Cs to be Letters of Credit under the DIP Agreement) pending entry of the Final Order up to an aggregate principal amount of $20,000,000 for working capital and other general corporate purposes of the Debtors and to pay interest, fees and expenses in connection with the DIP Financing, and, in each case, subject to the DIP Documents and the terms hereof.

(b)      The Debtors are authorized to use the proceeds of borrowings under the DIP Agreement and Cash Collateral in accordance with and to the extent permitted by the DIP Documents and the terms thereof.

(c)      On an interim basis, in furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts and to execute and deliver all instruments and documents that the DIP Agent determines to be reasonably required or necessary for the Debtors' performance of their obligations under the DIP Documents, including without limitation:

(i)     the execution, delivery and performance of the DIP Documents;

(ii)    the execution, delivery and performance of one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case in such form as the Debtors, the DIP Agent and the requisite DIP Lenders may agree, and no further approval of this Court shall be required for immaterial amendments, waivers, consents or other modifications to and under the DIP Documents (and any fees paid in connection therewith) that do not (A) shorten the maturity of the Loans or (B) increase the Commitments or the rate of interest payable on the Loans under the DIP Agreement; provided, however, that a copy of any such amendment, waiver, consent or other modification shall be filed by the Debtors with this Court and served by the Debtors on the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") and any statutory committee of unsecured creditors appointed in the Cases (the "Committee"), if any;

(iii)   the non-refundable payment to the DIP Agent,  its affiliates and the DIP Lenders, as the case may be, of the fees set forth in the DIP Documents and any separate fee letter with the DIP Agent or its affiliates; and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(d)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid and binding obligations of the Debtors, enforceable against the Debtors in accordance with the terms of this Order and the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, voidable, avoidable or recoverable under the Bankruptcy Code or under any applicable nonbankruptcy law (including without limitation, under sections 502(d) or 548 of the Bankruptcy Code or under any

022537-0172-13730-Active.11906312.7                                      03/16/2010 9:30 AM

applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.      *Superpriority Claims.*

(a)      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed senior administrative expense claims (the "Superpriority Claims") against the Debtors and, except to the extent expressly set forth in this Order in respect of the Carve Out, such Superpriority Claims shall have priority over any and all administrative expenses, adequate protection claims and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment.

(b)      For purposes hereof, the "Carve Out" shall mean (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code; and (ii) after the occurrence and during the continuance of an Event of Default under the DIP Agreement and delivery of notice thereof (the "Carve Out Notice") to each of the counsel for the Debtors and (if any) the Committee, (A) the payment of accrued and unpaid professional fees and expenses incurred by (1) the Debtors and allowed by this Court, in an aggregate amount not exceeding $1,400,000, and (2) the Committee and allowed by this Court, in an aggregate amount not exceeding $350,000, plus (B) all unpaid

11

professional fees and expenses of the Debtors and the Committee that were incurred prior to the delivery of the Carve Out Notice and allowed by this Court, whether or before after the delivery of the Carve Out Notice; provided that the Carve Out shall include an additional $100,000 in the aggregate for any professional fees, costs and expenses incurred by any Chapter 7 trustee; provided further that (X) the Carve Out shall not be available to pay any such professional fees and expenses incurred in connection with the initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the DIP Agent, the DIP Lenders, the Prepetition Secured Parties or the Prepetition Agent or liens and claims held by DIP Agent, the DIP Lenders, the Prepetition Secured Parties or the Prepetition Agent, (Y) so long as no Event of Default shall have occurred and be continuing, the Carve Out shall not be reduced by the payment of fees and expenses allowed by this Court, whether before or after delivery of the Carve Out Notice, and payable under sections 328, 330 and 331 of the Bankruptcy Code, and (Z) nothing in this Order shall impair the right of any party to object to the reasonableness of any such fees or expenses to be paid by the Debtors' estates.

7.    *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors (or recordation or other filing) of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or the possession or control by the DIP Agent of any property, the following security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "DIP Collateral"), subject only to the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

(a)     <u>First Lien on Unencumbered Property</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest, whether existing on or as of the Petition Date or thereafter acquired, that is not subject to valid, perfected, non-avoidable and enforceable liens in existence on or as of the Petition Date (collectively, the "<u>Unencumbered Property</u>"), including without limitation, any and all unencumbered cash, accounts receivable, inventory, general intangibles, contracts, securities, chattel paper, owned real estate, real property leaseholds, fixtures, machinery, equipment, deposit accounts, patents, copyrights, trademarks, tradenames, rights under license agreements and other intellectual property, capital stock of the subsidiaries of Holdings and the proceeds of all of the foregoing; <u>provided</u> <u>that</u>, the Unencumbered Property shall not include the Avoidance Actions and any assets upon which security may not be lawfully granted, but subject to the entry of the Final Order, Unencumbered Property shall include any proceeds or property recovered in respect of any Avoidance Actions.

(b)     <u>Liens Junior to Certain Existing Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior lien on, and security interest in, all tangible and intangible prepetition and postpetition property in which the Debtors have an interest (other than the property described in paragraph 7(c), as to which the DIP Liens will be as described in such clause), whether now existing or hereafter acquired and all proceeds thereof, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected after the Petition Date as permitted by section 546(b)

of the Bankruptcy Code, which security interests and liens in favor of the DIP Agent and the DIP Lenders shall be junior to such valid, perfected and unavoidable liens.

(c) <u>Liens Priming Prepetition Secured Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority, senior priming lien on, and security interest in, all now or hereafter acquired Prepetition Collateral and all proceeds thereof. The DIP Liens on the Prepetition Collateral shall be senior in all respects to the security interests in, and liens on, the Prepetition Collateral of the Prepetition Agent and the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens (as defined in paragraph 13(a) below)), but shall be junior to any valid, perfected and unavoidable security interests in and liens on the Prepetition Collateral that were valid and senior to the liens of the Prepetition Agent and the Prepetition Secured Parties as of the Petition Date, including as permitted by section 546(b) of the Bankruptcy Code.

(d) <u>Liens Senior to Certain Other Liens</u>. Other than involuntary liens arising under applicable non-bankruptcy law, the DIP Liens and the Adequate Protection Liens shall not be (i) subject or subordinate to (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (B) any liens arising after the Petition Date, or (ii) subordinated to or made *pari passu* with any other lien or security interest under sections 363 or 364 of the Bankruptcy Code or otherwise.

8. *Remedies After Event of Default.*

(a) The automatic stay under section 362 of the Bankruptcy Code is vacated and modified to the extent necessary to permit the DIP Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence and during the continuance of an Event of Default, all rights and remedies under the DIP Documents, other than those rights and remedies against the DIP

Collateral as provided in clause (ii) below, and (ii) upon the occurrence and during the continuance of an Event of Default, and the giving of seven days' prior written notice to the Debtors (with a copy to counsel for the Debtors, counsel to the Committee (and, if no Committee is formed, the Debtors' largest fifty (50) unsecured creditors on a consolidated basis) and to the U.S. Trustee), all rights and remedies against the DIP Collateral provided for in the DIP Documents and this Order (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the DIP Agent or any DIP Lender and the right to prohibit further use of Cash Collateral). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing. In no event shall the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral. The DIP Agent's or any DIP Lender's delay or failure to exercise rights and remedies under the DIP Documents or this Order shall not constitute a waiver of the DIP Agent's or the DIP Lenders' rights hereunder, thereunder or otherwise, unless any such waiver is pursuant to a written instrument executed in accordance with the terms of the DIP Agreement.

(b)     The Prepetition Secured Parties may not exercise any rights or remedies under the Prepetition Loan Documents or this Order unless and until all DIP Obligations have been paid in full in cash, all letters of credit have been cash collateralized, backstopped or returned undrawn, in each case, in accordance with the terms of the DIP Agreement and all commitments thereunder have been terminated (collectively, "Discharge of the DIP Obligations"). After the Discharge of the DIP Obligations, the Prepetition Secured Parties may prohibit further use of Cash Collateral and/or exercise such other rights or remedies as provided

herein.  If, prior to the Discharge of the DIP Obligations, the Prepetition Secured Parties receive

any DIP Collateral or proceeds thereof, the Prepetition Agent and the Prepetition Secured Parties

shall hold in trust and immediately turn over such DIP Collateral and the proceeds thereof to the

DIP Agent with any necessary endorsements and all without any defenses, counterclaims, offsets

or other reservation of rights.

9.      *Limitation on Charging Expenses Against Collateral*.  Subject to and effective

upon entry of the Final Order, except to the extent of the Carve Out with respect to the DIP

Collateral and the Prepetition Collateral, no expenses of administration of the Cases or any future

proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings

under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the

Prepetition Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle

of law or in equity, without the prior written consent of the DIP Agent and after the Discharge of

the DIP Obligations, the Prepetition Agent, and no such consent shall be implied from any other

action or inaction by the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition

Secured Parties.

10.     *Payments Free and Clear*.  Any and all payments or proceeds remitted to the DIP

Agent on behalf of the DIP Lenders or the Prepetition Agent on behalf of the Prepetition Secured

Parties pursuant to the provisions of this Order or any subsequent order of this Court shall be

received free and clear of any claim, charge, assessment or other liability.

11.     [Reserved].

12.     *Use of Prepetition Collateral (including Cash Collateral).*  The Debtors are

hereby authorized to use the Prepetition Collateral, including the Cash Collateral, during the

period from the Petition Date through and including the Termination Date under the DIP

Agreement for working capital and general corporate purposes in accordance with the terms and conditions of this Order; provided that the Prepetition Secured Lenders are granted adequate protection as hereinafter set forth; provided further that after the Discharge of the DIP Obligations, all such uses of Cash Collateral shall be subject to paragraph 5(b) of this Order.

13.    *Adequate Protection*.  The Prepetition Agent and the Prepetition Secured Parties are entitled, pursuant to sections 361, 363(c)(2) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral, the use of Cash Collateral, in an amount equal to the aggregate diminution in value of the Prepetition Collateral, including without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of any Prepetition Collateral, including the Cash Collateral, the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (such diminution in value, the "Adequate Protection Obligations").  As adequate protection, the Prepetition Agent and the Prepetition Secured Lenders are hereby granted the following:

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Prepetition Agent (for itself and for the benefit of the Prepetition Secured Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of security agreements, pledge agreements, mortgages, financing statements or other agreements) a valid, perfected replacement security interest in and lien on all of the DIP Collateral (the "Adequate Protection Liens"), subject and subordinate only to (i) the Permitted Prepetition Liens, (ii) the DIP Liens, and (iii) the Carve Out.

(b)    Section 507(b) Claims.  The Adequate Protection Obligations shall constitute superpriority claims as provided in section 507(b) of the Bankruptcy Code (the

"507(b) Claims"), with priority in payment over any and all administrative expenses of the kinds specified or ordered pursuant to any provision of the Bankruptcy Code, including without limitation, sections 326, 328, 330, 331, 503(b), 506(c), 507(a), 726, 1113 and 1114 of the Bankruptcy Code, subject and subordinate only to (i) the Carve Out and (ii) the Superpriority Claims granted in respect of the DIP Obligations. Except to the extent expressly set forth in this Order or the Final Order, the Prepetition Agent and the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the Discharge of the DIP Obligations.

(c)     Fees and Expenses.  The Prepetition Agent shall receive from the Debtors reimbursement of all fees and expenses incurred or accrued by the Prepetition Agent under the Prepetition Loan Documents, including without limitation, the reasonable fees and disbursements of advisors, counsel and executive search consultants to the Prepetition Agent, whether incurred or accrued prior to or after the Petition Date.  None of the fees and expenses payable pursuant to this paragraph 13(c) shall be subject to separate approval by this Court (but this Court shall resolve any dispute as to the reasonableness of any such fees and expenses), and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto.  Subject to any *bona fide* dispute as to the reasonableness of such fees and expenses, the Debtors shall pay the fees and expenses provided for in this paragraph 13(c) promptly (but no later than ten (10) Business Days) after invoices for such fees and expenses shall have been submitted to the Debtors, and the Debtors shall promptly provide copies of such invoices to the Committee (if any) and the U.S. Trustee.

(d)     Information.  The Debtors shall promptly provide to the Prepetition Agent any written financial information or periodic reporting that is provided to, or required to be

provided to, the DIP Agent or the DIP Lenders and shall continue to provide to the Prepetition Agent and the Prepetition Secured Lenders all financial and other reporting as provided on a prepetition basis.

(e)     Application of Proceeds.  So long as the Discharge of the DIP Obligations has not occurred, all proceeds of any Prepetition Collateral pursuant to the enforcement of any of the Prepetition Loan Documents or the exercise of any remedial provision thereunder or under this Order or the Final Order, together with all other proceeds received by any Prepetition Secured Party as a result of any such enforcement or the exercise of any such remedial provision or as a result of any distribution of or in respect of any Prepetition Collateral (whether or not expressly characterized as such), or the application of any Prepetition Collateral (or proceeds thereof) to the payment thereof or any distribution of Prepetition Collateral (or proceeds thereof) upon the liquidation or dissolution of any Debtor, shall be applied against the DIP Obligations until the Discharge of the DIP Obligations has occurred.  Upon the Discharge of the DIP Obligations, the DIP Agent shall deliver to the Prepetition Agent any proceeds of Prepetition Collateral held by it in the same form as received, with any necessary endorsements or as a court of competent jurisdiction may otherwise direct, to be applied by the Prepetition Secured Lenders in such order as specified in the Prepetition Loan Documents.

14.     *Reservation of Rights of Prepetition Secured Lenders.*

(a)     Based upon the consent of the Prepetition Secured Parties, this Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Agent and the Prepetition Secured Parties.  Notwithstanding any other provision hereof, the grant of adequate protection to the Prepetition Agent and the Prepetition Secured Lenders pursuant hereto is without prejudice to the right of the Prepetition Agent to seek

022537-0172-13730-Active.11906312.7

modification of the grant of adequate protection provided hereby after the Discharge of DIP Obligations so as to provide different or additional adequate protection, and without prejudice to the right of the Debtors or any other party in interest to contest any such modification.  Except as expressly provided herein, nothing contained in this Order (including without limitation, the authorization to use any Cash Collateral) shall impair or modify any rights, claims or defenses available in law or equity to the Prepetition Agent or any Prepetition Secured Lender.  The consent of the Prepetition Agent and the Prepetition Secured Lenders to the priming of the Prepetition Agent's liens on the Prepetition Collateral by the DIP Liens (a) is limited to the DIP Financing and (b) does not constitute, and shall not be construed as constituting, an acknowledgement or stipulation by the Prepetition Agent or the Prepetition Secured Lenders that, absent such consent, their interests in the Prepetition Collateral would be adequately protected pursuant to this Order.

(b)     In the event of the Discharge of the DIP Obligations, the Debtors will continue to be bound by the covenants and subject to the Events of Default contained in the DIP Agreement (as in effect immediately prior to its termination), which will thereafter be for the benefit of the Prepetition Secured Parties.

15.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders are hereby authorized, but not required, to file or record financing statements, intellectual property filings, mortgages, notices of lien or similar instruments in any jurisdiction, take possession of or control over, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder.  Whether or not the DIP Agent or the Prepetition Agent shall, in their respective sole discretion, choose to file such financing

statements, intellectual property filings, mortgages, notices of lien or similar instruments, take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination as of the date of entry of this Order.

(b)     A certified copy of this Order may, in the discretion of the DIP Agent or the Prepetition Agent, as the case may be, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

(c)     The Debtors shall execute and deliver to the DIP Agent and the Prepetition Agent, as the case may be, all such agreements, financing statements, instruments and other documents as the DIP Agent and the Prepetition Agent may reasonably request to evidence, confirm, validate or perfect the DIP Liens and the Adequate Protection Liens.

16.     *Preservation of Rights Granted Under the Order.*

(a)     No claim or lien having a priority senior to or *pari passu* with those granted by this Order to the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders shall be granted or allowed and the DIP Liens and the Adequate Protection Liens shall not be subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement and a termination of the right to use Cash Collateral if any of the Debtors seeks, or if there is entered, (i) any modification of this Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the DIP Agent or the Prepetition Agent, or (ii) an order converting or dismissing any of the Cases.

(c)     The DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, privileges and benefits granted in section 363(m) and 364(e) of the Bankruptcy Code.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims, the Adequate Protection Obligations, the Adequate Protection Liens, the 507(b) Claims and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Lenders granted by this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in the Cases, in any successor cases if the Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Adequate Protection Obligations, the DIP Obligations, the Superpriority Claims, the Section 507(b) Claims, the other administrative expense claims

22

granted pursuant to this Order, and all other rights and remedies of the DIP Agent, the DIP Lenders, the Prepetition Agent and the Prepetition Secured Parties granted by this Order and the DIP Documents shall continue in full force and effect until all DIP Obligations and all Adequate Protection Obligations are indefeasibly paid in full in cash.

17.     *Effect of Stipulations on Third Parties*.  The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding solely upon the Debtors in all circumstances.  The stipulations and admissions contained in this Order, including without limitation, in paragraph 3 of this Order, shall be binding upon all other parties in interest, including without limitation, the Committee (if any), unless (a) any such Committee, which shall be deemed to have requisite standing, or any other party-in-interest with requisite standing, has duly filed an adversary proceeding (subject to the limitations contained herein, including without limitation, in paragraph 18) by no later than the date that is the later of (i) 60 days after the date of entry of the Final Order, subject to extension by the Court, after notice and a hearing, for cause shown, and (ii) any such later date agreed to in writing by the Prepetition Agent in its sole and absolute discretion (A) challenging the validity, enforceability, priority or extent of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations or (B) otherwise asserting or prosecuting any Avoidance Actions or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "Claims and Defenses") against the Prepetition Agent or any of the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors in connection with any matter related to the Prepetition Obligations or the Prepetition Collateral and (b) an order is entered by a court of competent jurisdiction and becomes final and non-appealable in favor of the plaintiff sustaining any such challenge or claim in any such duly

filed adversary proceeding; provided that, as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date. If no such adversary proceeding is duly filed in respect of the Prepetition Obligations, (x) the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 case, (y) the liens on the Prepetition Collateral securing the Prepetition Obligations, as the case may be, shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected and of the priority specified in paragraph 3(b), not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the Prepetition Agent and the Prepetition Secured Lenders, as the case may be, and the liens on the Prepetition Collateral granted to secure the Prepetition Obligations shall not be subject to any other or further challenge by the Committee (if any) or any other party-in-interest, and such Committee or party-in-interest shall be enjoined from seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding is duly filed, the stipulations and admissions contained in paragraph 3 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on the Committee (if any) and any other party-in-interest, except as to any such findings and admissions that were expressly and successfully challenged in such adversary proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code) (other than the Committee (if any) as provided above), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including

24

without limitation, Claims and Defenses with respect to the Prepetition Loan Documents or the Prepetition Obligations or any liens granted by any Debtor to secure any of the foregoing.

18. *Limitation on Use of DIP Financing and DIP Collateral*. The Debtors shall use the DIP Financing and the Prepetition Collateral (including the Cash Collateral) solely as provided in this Order and the DIP Documents. Notwithstanding anything herein or in any other order of this Court to the contrary, no Loans or Letters of Credit under the DIP Agreement, DIP Collateral, Prepetition Collateral (including the Cash Collateral) or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents, the Prepetition Loan Documents or the liens or claims granted under this Order, the DIP Documents or the Prepetition Loan Documents, (b) assert any Claims and Defenses or any other causes of action against the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties or their respective agents, affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the DIP Agent's or the Prepetition Agent's assertion, enforcement or realization on the Prepetition Collateral or the DIP Collateral in accordance with the DIP Documents, the Prepetition Loan Documents or this Order, (d) seek to modify any of the rights granted to the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Lenders hereunder or under the DIP Documents or the Prepetition Loan Documents, in the case of each of the foregoing clauses (a) through (d), without such party's prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) permitted under the DIP Documents; provided that, no more than an aggregate of $25,000 of the Prepetition Collateral (including the Cash Collateral), Loans under the DIP Agreement, the DIP Collateral or the Carve

25

Out may be used by the Committee to investigate the validity, enforceability or priority of the Prepetition Obligations or the liens on the Prepetition Collateral securing the Prepetition Obligations, or investigate any Claims and Defenses or other causes action against the Prepetition Agent or the Prepetition Secured Lenders.

19.     *Insurance*.  To the extent the Prepetition Agent is listed as loss payee under the Debtors' insurance policies, the DIP Agent is also deemed to be the loss payee under the Debtors' insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations, and <u>second</u>, to the payment of the Prepetition Obligations.

20.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

21.     *Master Proof of Claim*.

(a)          To facilitate the processing of claims, to ease the burden upon this Court and to reduce any unnecessary expense to the Debtors' estates, subject to entry of the Final Order, the Prepetition Agent is authorized (but not required) to file a single master proof of claim on behalf of itself and the Prepetition Secured Parties on account of their claims arising under the Prepetition Loan Documents and hereunder against all Debtors in the Borrower's case only (the "<u>Master Proof of Claim</u>").  The Prepetition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Bankruptcy Rules in any of the Cases.

(b)          Upon filing of the Master Proof of Claim, the Prepetition Agent, each Prepetition Secured Lender and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Prepetition Loan Documents and the claims

022537-0172-13730-Active.11906312.7

(as defined in section 101 of the Bankruptcy Code) of the Prepetition Agent and each Prepetition Secured Party (and each of their respective successors and assigns) named in the Master Proof of Claim shall be allowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the Master Proof of Claim; provided that the Prepetition Agent may, but shall not be required, to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of the claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

(c)     The provisions set forth in paragraphs (a) and (b) above and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, the Committee, the Prepetition Agent, the Prepetition Secured Parties or any other party in interest or their respective successors in interest, including without limitation, the right of each Prepetition Secured Lender (or its successor in interest) to vote separately on any plan of reorganization proposed in the Cases.

22.     *Binding Effect; Successors and Assigns.*  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties-in-interest in the Cases, including without limitation, the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties, the Committee (if any), and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Parties and the

Debtors and their respective successors and assigns; provided that, except to the extent expressly set forth in this Order, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Parties shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.

23.     *Limitation of Liability*.  Subject to entry of the Final Order, in determining to make any Loan or any Letter of Credit under the DIP Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the DIP Agent, the Prepetition Agent, the DIP Lenders and the Prepetition Secured Parties shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).  Furthermore, nothing in this Order or in the DIP Documents shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition Agent or the Prepetition Secured Parties any liability for any claims arising from the prepetition or post-petition activities of any of the Debtors and their affiliates (as defined in section 101(2) of the Bankruptcy Code).

24.     *Effectiveness.*  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof as of the Petition Date, and there shall be no stay of execution of effectiveness of this Order.

25.     *Final Hearing*.  The Final Hearing is scheduled for April 1, 2010 at 10:00 a.m. (prevailing New York City time) before this Court.

26.    *Final Hearing Notice*.  The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of the Final Hearing) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to the Committee (if any) after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, New York 10019, Attention: John Longmire, Esq., attorney for the Debtors, (b) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Attention: Sandy Qusba, Esq. and Morris J. Massel, Esq., attorneys for the DIP Agent and the Prepetition Agent, and (c) the Office of the U.S. Trustee for the Southern District of New York, and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, Attention: Andrew Velez-

022537-0172-13730-Active.11906312.7

03/16/2010 9:30 AM

Rivera, Esq., in each case to allow actual receipt by the foregoing no later than March 29, 2010

at 4:00 p.m. (prevailing New York City time).


Dated:   March 15, 2010
         New York, New York

                                        __/s/   STUART M. BERNSTEIN_____
                                        UNITED STATES BANKRUPTCY JUDGE