## **EXHIBIT 1**

### **Plan**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| EnviroSolutions of New York, LLC, <u>et al.</u>, | : | Case No. 10-11236 (SMB) |
| | : | |
| Debtors. | : | Jointly Administered |

---------------------------------------------------------x

## JOINT PLAN OF REORGANIZATION FOR
## ENVIROSOLUTIONS OF NEW YORK, LLC AND ITS AFFILIATED DEBTORS

**Nothing contained herein shall constitute an offer, acceptance or a legally binding obligation of the Debtors or any other party in interest and the Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances or rejections with respect to the Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Southern District of New York. Such a solicitation will only be made in compliance with applicable provisions of securities and/or bankruptcy laws. YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE (INCLUDING IN CONNECTION WITH THE PURCHASE OR SALE OF THE DEBTORS' SECURITIES) PRIOR TO THE APPROVAL OF THE DISCLOSURE STATEMENT (AS DEFINED HEREIN) BY THE BANKRUPTCY COURT.**

Dated: New York, New York
     May 3, 2010

**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000

  Counsel for Debtors
   and Debtors in Possession

# TABLE OF CONTENTS

Page

ARTICLE I        DEFINITIONS AND INTERPRETATIONS ................................................1

ARTICLE II       METHOD OF CLASSIFICATION OF CLAIMS AND INTERESTS AND
                 GENERAL PROVISIONS ......................................................................12
2.1    General Rules of Classification .................................................................12
2.2    Settlement of Certain Intercreditor Issues.................................................13
2.3    Separate Classification of Each Debtor's Claims ......................................13
2.4    Administrative, DIP Lender, Fee and Priority Tax Claims........................13
2.5    Deadline for Filing Fee Claims .................................................................13
2.6    U.S. Trustee Fees ......................................................................................14
2.7    Elimination of Vacant Classes ..................................................................14
2.8    Voting Classes...........................................................................................14

ARTICLE III      CLASSIFICATION OF CLAIMS AND INTERESTS ............................14
3.1    Class 1 .......................................................................................................14
3.2    Class 2 .......................................................................................................14
3.3    Class 3 .......................................................................................................14
3.4    Class 4 .......................................................................................................14
3.5    Class 5 .......................................................................................................14
3.6    Class 6 .......................................................................................................14
3.7    Class 7 .......................................................................................................14
3.8    Class 8 .......................................................................................................14
3.9    Class 9 .......................................................................................................15

ARTICLE IV       NEW COMMON STOCK .....................................................................15
4.1    Authorization and Issuance of New Common Stock .................................15
4.2    Shareholders' Agreement and Registration Rights Agreement .................15
4.3    New Warrants ............................................................................................15

ARTICLE V        TREATMENT OF UNIMPAIRED CLASSES .......................................16
5.1    DIP Lender Claims ....................................................................................16
5.2    Other Secured Claims – Class 3................................................................16
5.3    Administrative Claims ...............................................................................17
5.4    Priority Non-Tax Claims – Class 1 ...........................................................18
5.5    Priority Tax Claims ...................................................................................18
5.6    Fee Claims.................................................................................................18
5.7    Ride-Through Unsecured Claims – Class 6 ...............................................19

ARTICLE VI       TREATMENT OF IMPAIRED CLASSES.............................................19
6.1    Prepetition Secured Lender Claims – Class 2............................................19
6.2    Second Lien Note Claims – Class 4...........................................................20
6.3    Senior Subordinated Note Claims – Class 5 ..............................................20
6.4    Other Unsecured Claims – Class 7 ............................................................20

i

6.5     Interests – Class 8 ...........................................................................20

6.6     Intercompany Claims – Class 9 ......................................................21

ARTICLE VII     MEANS OF IMPLEMENTATION..................................................21

7.1     Restructuring Transaction ................................................................21

7.2     Corporate Action .............................................................................22

7.3     Effectuating Documents and Further Transactions..........................22

7.4     New Revolving Credit Facility ........................................................22

7.5     Directors of the Reorganized Debtors..............................................22

7.6     Management Incentive Plan and Management Equity Plan ..............23

7.7     General Distribution Mechanics ......................................................23

7.8     Unclaimed Property .........................................................................24

7.9     Distributions to Holders of Other Unsecured Claims.......................24

7.10     Withholding Taxes ...........................................................................26

7.11     Fractional Plan Securities.................................................................26

7.12     Exemption from Certain Transfer Taxes ..........................................27

7.13     Exemption from Securities Laws......................................................27

7.14     Setoffs and Recoupments .................................................................27

7.15     Insurance Preservation and Proceeds...............................................27

7.16     Solicitation of Debtors .....................................................................27

ARTICLE VIII     EFFECT OF THE PLAN ON CLAIMS AND INTERESTS ........28

8.1     Discharge .........................................................................................28

8.2     Revesting and Vesting .....................................................................29

8.3     Survival of Certain Indemnification Obligations.............................30

8.4     Release of Claims............................................................................30

8.5     Objections to Claims and Interests...................................................33

8.6     Amendments to Claims ....................................................................34

8.7     Estimation of Claims........................................................................34

ARTICLE IX     EXECUTORY CONTRACTS..........................................................34

9.1     Executory Contracts and Unexpired Leases ....................................34

9.2     Bar Date for Rejection Damages ......................................................35

9.3     Cure..................................................................................................36

ARTICLE X     CONDITIONS PRECEDENT TO  CONFIRMATION AND
CONSUMMATION OF THE PLAN ................................................36

10.1     Conditions Precedent to Confirmation.............................................36

10.2     Conditions to the Effective Date ......................................................36

10.3     Waiver of Conditions Precedent ......................................................37

10.4     Effect of Non-Occurrence of the Conditions to Consummation............37

10.5     Withdrawal of the Plan .....................................................................38

10.6     Cramdown ........................................................................................38

ARTICLE XI     ADMINISTRATIVE PROVISIONS.................................................38

11.1     Retention of Jurisdiction ..................................................................38

11.2     Governing Law ................................................................................41

| | | |
|---|---|---|
| 11.3 | Section 1125(e) of the Bankruptcy Code | 41 |
| 11.4 | Time | 41 |
| 11.5 | Retiree Benefits | 41 |
| 11.6 | Amendments | 41 |
| 11.7 | Successors and Assigns | 42 |
| 11.8 | Confirmation Order and Plan Control | 42 |
| 11.9 | Creditors' Committee | 42 |
| 11.10 | Termination of Professionals | 42 |
| 11.11 | Hart-Scott-Rodino Antitrust Improvements Act | 43 |
| 11.12 | Post-Confirmation Reporting | 43 |
| 11.13 | Notices | 43 |
| 11.14 | Reservation of Rights | 45 |

# <u>EXHIBITS</u>

EXHIBIT A                          List of Debtors


EXHIBITS IN THE PLAN SUPPLEMENT

Exhibit 1                          New Term Loan Agreement

Exhibit 2                          New Revolving Credit Agreement

Exhibit 3                          Ride-Through Unsecured Claims

Exhibit 4                          Shareholders' Agreement

Exhibit 5                          Registration Rights Agreement

Exhibit 6                          New Warrant Agreement

Exhibit 7                          List of Officers and Directors

# ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

### A.     Definitions.

The capitalized terms set forth below shall have the following meanings:

**1.1.     Administrative Bar Date** shall have the meaning ascribed to such term in Section 5.3(a) of the Plan.

**1.2.     Administrative Claim** means a Claim, other than a Fee Claim, a claim for payment of U.S. Trustee Fees or a DIP Lender Claim, for payment of costs or expenses of administration specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates and operating the business of the Debtors (such as wages, salaries or commissions for services rendered).

**1.3.     Allowed [_____] Claim** means an Allowed Claim in the specified Class.  For example, an Allowed Class 1 Claim or Allowed Priority Non-Tax Claim is an Allowed Claim in the Priority Non-Tax Claims Class designated herein as Class 1.

**1.4.     Allowed Claim** means a Claim to the extent such Claim:  (a) is either: (A) scheduled by the Debtors pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed and for which no contrary proof of claim has been filed; or (B) (i) proof of which has been timely filed, or deemed timely filed, with the Bankruptcy Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Bankruptcy Court, or late filed with leave of the Bankruptcy Court; and (ii) not objected to within the period fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Bankruptcy Court; or (b) has otherwise been allowed by a Final Order or pursuant to the Plan.  An Allowed Claim: (A) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (B) shall be net of any setoff amount that may be asserted by any Debtor against the holder of such Claim, which shall be deemed to have been setoff in accordance with the provisions of the Plan.  Without limiting the foregoing, except in the sole discretion of the Debtors or the Reorganized Debtors, no Claim (other than a Claim that has been allowed by Final Order of the Bankruptcy Court or pursuant to the Plan) shall be considered an Allowed Claim before the time that an objection has been or may be filed with regard to such Claim if: (x) the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount of or has a classification from any corresponding Claim scheduled by the Debtors in their Schedules of Assets and Liabilities; (y) any corresponding Claim scheduled by the Debtors has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been scheduled by the Debtors in their Schedules of Assets and Liabilities.

**1.5.     Ballot** means the ballot distributed to each eligible claimant by the Claims Agent, on which ballot such claimant may, *inter alia*, vote for or against the Plan.

**1.6.** **Bankruptcy Code** means title 11 of the United States Code, as now in effect or hereafter amended, as applicable to the Reorganization Cases.

**1.7.** **Bankruptcy Court** means the United States Bankruptcy Court for the Southern District of New York, or any other court exercising competent jurisdiction over the Reorganization Cases or any proceeding therein.

**1.8.** **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of New York), as applicable to the Reorganization Cases.

**1.9.** **Bar Date** means any deadline for filing proof of a Claim that arose on or prior to the Petition Date, as established by an order of the Bankruptcy Court or the Plan.

**1.10.** **Borrowers** means EnviroSolutions Real Property Holdings, Inc. and each of its direct and indirect subsidiaries.

**1.11.** **Business Day** means any day except a Saturday, Sunday, or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**1.12.** **Cash** means cash and cash equivalents, including, but not limited to, bank deposits, checks, and other similar items.

**1.13.** **Claim** means a claim against a Debtor, whether or not asserted, known or unknown, as such term is defined in section 101(5) of the Bankruptcy Code.

**1.14.** **Claims Agent** means Kurtzman Carson Consultants LLC, or any other Person approved by the Bankruptcy Court to act as the claims and noticing agent in the Reorganization Cases pursuant to 28 U.S.C. § 156(c).

**1.15.** **Claims Distribution Fund** shall have the meaning ascribed to such term in Section 7.9(a).

**1.16.** **Class** means a group of Claims or Interests classified by the Plan pursuant to section 1123(a)(1) of the Bankruptcy Code, and as set forth in Article III of the Plan.

**1.17.** **Confirmation Date** means the date the Bankruptcy Court enters the Confirmation Order on its docket.

**1.18.** **Confirmation Hearing** means the hearing pursuant to which the Bankruptcy Court enters the Confirmation Order.

**1.19.** **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders.

**1.20.** **Consenting Lenders** means, collectively, as of the relevant time, those holders of Prepetition Secured Lender Claims that are party to the Restructuring Support Agreement.

**1.21.** **Creditors' Committee** means the Official Committee of Unsecured Creditors in the Reorganization Cases, as appointed by the Office of the United States Trustee for the Southern District of New York, and as may be reconstituted from time to time.

**1.22.** **Debtors** means the debtors in the Reorganization Cases that are listed on Exhibit A hereto.

**1.23.** **DIP Agent** means Deutsche Bank Trust Company Americas, in its capacity as the administrative agent under the DIP Facility.

**1.24.** **DIP Facility** means the senior secured super priority revolving credit facility provided to the Debtors pursuant to that certain Credit Agreement, dated as of March 10, 2010, among the Borrowers, the non-Borrower Debtors, as guarantors, each of the DIP Lenders, and the DIP Agent, as the same may have been modified and amended from time to time, in accordance with the terms thereof.

**1.25.** **DIP Lender Claim** means a Claim of a DIP Lender in respect of the obligations of the Debtors arising under the DIP Facility, including Claims related to letters of credit outstanding under the DIP Facility, if any, and the outstanding and unpaid fees and expenses of the DIP Agent and the DIP Lenders.

**1.26.** **DIP Lenders** means the lenders that are party to the DIP Facility from time to time and shall include any "Issuing Lender" as defined in the DIP Facility.

**1.27.** **DIP Order** means that certain order or orders of the Bankruptcy Court authorizing and approving the DIP Facility.

**1.28.** **Disallowed** means a finding of the Bankruptcy Court in a Final Order, or provision of the Plan providing, that a Claim shall not be an Allowed Claim.

**1.29.** **Disclosure Statement** means the Disclosure Statement that relates to the Plan and is approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

**1.30.** **Disclosure Statement Order** means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information pursuant to section 1125 of the Bankruptcy Code.

**1.31.** **Disputed Claim** means that portion (including, when appropriate, the whole) of a Claim that is not an Allowed Claim.

**1.32. Disputed Claims Reserve** shall have the meaning ascribed to such term in Section 7.9(b).

**1.33. Distributable Cash** shall have the meaning ascribed to such term in Section 7.9(b).

**1.34. Distribution** means the distribution in accordance with the terms of the Plan of: (a) Cash; (b) New Common Stock; (c) the New Term Loan Obligations; or (d) New Warrants, in each case, if any, and as the case may be.

**1.35. Distribution Address** means the address set forth in the relevant proof of claim. If no proof of claim is filed in respect to a particular Claim, then the address set forth in the Schedules of Assets and Liabilities or register maintained for registered securities; provided that with respect to Prepetition Secured Lender Claims, the Distribution Address shall be the address of the Prepetition Agent. Notwithstanding anything to the contrary herein, to the extent a Distribution is required to be made to a Distribution Agent, the Distribution Address for the relevant Claim shall be the address of the relevant Distribution Agent.

**1.36. Distribution Agent** means with respect to: (a) Distributions made on account of the Prepetition Secured Lender Claims, the Prepetition Agent; and (b) any other Distributions, any stock transfer agents, agents contractually authorized and/or obligated to make Distributions to certain claimants and similar intermediaries and agents participating in making or conveying Distributions as required by the Plan, which may include any Reorganized Debtor.

**1.37. Distribution Date** means (a) with respect to DIP Lender Claims and Prepetition Secured Lender Claims, the Effective Date, (b) with respect to Administrative Claims, Priority Non-Tax Claims, Priority Tax Claims, Other Secured Claims, Second Lien Note Claims, and Ride-Through Unsecured Claims, the date that is the latest of: (i) the Effective Date (or as soon thereafter as reasonably practicable); (ii) the date such Claim would ordinarily be due and payable; and (iii) the date (or as soon thereafter as reasonably practicable) that is fifteen (15) days (or, if such date is not a Business Day, on the next Business Day thereafter) after such Claims become Allowed Claims or otherwise become payable under the Plan, and (c) with respect to Fee Claims, the date (or as soon thereafter as reasonably practicable) that such Claims are allowed by Final Order of the Bankruptcy Court.

**1.38. Effective Date** means a Business Day, selected by the Debtors, which is after the entry of the Confirmation Order, on which all conditions to the Effective Date set forth in Section 10.2 of the Plan have been satisfied or waived.

**1.39. Electing Prepetition Lender** means a Prepetition Lender (a) whose pro rata share of New Common Stock would be greater than 4.9% of all New Common Stock issued under the Plan, and (b) who elects to comply with all applicable requirements of N.J.S.A. 13:1E-126 et seq. and its implementing regulations, N.J.A.C. 7:26-16.1 et seq.

**1.40. Environmental Claim** means a Claim against a Debtor relating to or arising out of environmental laws of the United States or any state, city or municipality,

including, without limitation, a Claim for control group liability under Comprehensive Environmental Response, Compensation, and Liability Act, or any other applicable law.

**1.41.** **Estates** means the estates created in the Reorganization Cases pursuant to section 541 of the Bankruptcy Code.

**1.42.** **Estimated Fee Claims** shall have the meaning ascribed to such term in Section 5.6 hereof.

**1.43.** **Estimation Order** means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim. The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.44.** **Fee Claim** means a Claim by a Professional Person (other than an ordinary course professional retained pursuant to an order of the Bankruptcy Court) for compensation or reimbursement pursuant to section 327, 328, 330, 331, 503(b) or 1103(a) of the Bankruptcy Code in connection with the Reorganization Cases.

**1.45.** **Final Fund Distribution** shall have the meaning ascribed to such term in Section 7.9(c).

**1.46.** **Final Order** means an order or judgment of the Bankruptcy Court, as entered on the docket of the Bankruptcy Court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely-filed appeal or petition for review, rehearing, remand or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought, provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before the Bankruptcy Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

**1.47.** **Holdings** means EnviroSolutions Holdings, Inc., a Delaware corporation.

**1.48.** **Initial Fund Distribution Date** shall have the meaning ascribed to such term in Section 7.9(c).

**1.49.** **Intercompany Claim** means any Claim (including an Administrative Claim), cause of action, or remedy held by a Debtor against another Debtor.

**1.50.** **Interest** means an equity security, within the meaning of section 101(16) of the Bankruptcy Code, in any Debtor, including but not limited to Old Common Stock or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

**1.51.** **Management Equity Plan** means the equity plan that will be established for certain employees of the Reorganized Debtors as described more fully in Article V of the Disclosure Statement, and on the terms set forth in <u>Exhibit A</u> to the Restructuring Support Agreement.

**1.52.** **Management Incentive Plan** means the incentive plan that was established for certain employees of the Reorganized Debtors as of February 19, 2010, and as described in Section V.F.5 of the Disclosure Statement.

**1.53.** **New Borrowers** means EnviroSolutions Real Property Holdings, Inc. and each of its direct and indirect subsidiaries on and after the Effective Date.

**1.54.** **New Common Stock** means the common stock of New Holdings, described in Article IV hereof, issued on the Effective Date and distributed in the manner provided by the Plan.

**1.55.** **New Holdings** means Holdings on and after the Effective Date.

**1.56.** **New Revolving Credit Agreement** means the first priority secured revolving credit agreement between New Borrowers, as borrowers, each of the other Reorganized Debtors that are not New Borrowers, as guarantors, and the lenders that are party thereto, in the amount of $30 million.

**1.57.** **New Revolving Credit Facility** means the revolving credit facility provided to the Reorganized Debtors pursuant to the New Revolving Credit Agreement.

**1.58.** **New Term Loan Agreement** means the second priority secured credit agreement between New Borrowers, as borrowers, the other Reorganized Debtors that are not New Borrowers, as guarantors, and the Prepetition Lenders or their nominees, which will provide a term loan facility in the amount of $85 million, a substantially final form of which is set forth in the Plan Supplement, which shall be in form and substance reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders.

**1.59.** **New Term Loan Obligations** means those certain obligations of the Reorganized Debtors under the New Term Loan Agreement.

**1.60.** **New Warrants** means the warrants that will be issued to Non-Electing Prepetition Lenders to purchase shares of New Common Stock at a strike price equal to $0.01 pursuant to the New Warrant Agreement.

**1.61.** **New Warrant Agreement** means that certain warrant agreement, dated as of the Effective Date, governing the New Warrants to be issued by New Holdings, substantially in the form included in the Plan Supplement, which shall be in form and substance reasonably acceptable to the Prepetition Agent and the Required Consenting Lenders.

**1.62.** **Non-Electing Prepetition Lender** means a Prepetition Lender (a) whose pro rata share of New Common Stock would, but for its election under clause (b) of this

definition, be greater than 4.9% of all New Common Stock issued under the Plan, and (b) who does not elect to comply with all applicable requirements of N.J.S.A. 13:1E-126 et seq. and its implementing regulations, N.J.A.C. 7:26-16.1 et seq.

**1.63.** **Old Common Stock** means the common stock of Holdings issued and outstanding or held in treasury as of the Confirmation Date.

**1.64.** **Other Prepetition Lender** means a Prepetition Lender who is not an Electing Prepetition Lender or a Non-Electing Prepetition Lender.

**1.65.** **Other Secured Claim** means a Secured Claim other than a DIP Lender Claim, a Second Lien Note Claim or a Prepetition Secured Lender Claim. Notwithstanding anything to the contrary herein, to the extent the a Debtor: (a) does not have a fee ownership interest in the property that is the subject of an asserted Other Secured Claim; or (b) is not a lessee under an assumed lease or financing lease of property that is the subject of an asserted Other Secured Claim, such Claim constitutes a Ride-Through Unsecured Claim or Other Unsecured Claim, as applicable.

**1.66.** **Other Unsecured Claim** (a) means any Claim that is not: (i) an Administrative, Priority Non-Tax, or Priority Tax Claim or a claim for U.S. Trustee Fees, (ii) an Other Secured Claim, (iii) a DIP Lender Claim, (iv) a Prepetition Secured Lender Claim, (v) a Fee Claim, (vi) a Senior Subordinated Note Claim, (vii) a Ride-Through Unsecured Claim, (viii) a Second Lien Note Claim; and (b) includes, for the avoidance of doubt, among other things, (i) any Claim arising from the rejection, pursuant to section 365 of the Bankruptcy Code, of an executory contract or unexpired lease during the Reorganization Cases (including pursuant to the Plan), and (ii) any Environmental Claim.

**1.67.** **Periodic Fund Distribution Date** shall have the meaning ascribed to such term in Section 7.9(c).

**1.68.** **Person** means any individual, corporation, partnership, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, including, for the avoidance of doubt, the Creditors' Committee, Interest holders, current or former employees of the Debtors, or any other entity.

**1.69.** **Petition Date** means March 10, 2010.

**1.70.** **Plan** means this Joint Plan of Reorganization, dated as of the date set forth on the first page hereof, for the Debtors, together with any amendments or modifications hereto as the Debtors may file hereafter (such amendments or modifications only being effective if approved by order of the Bankruptcy Court), which shall be in form and substance reasonably satisfactory to the Prepetition Agent and the Required Consenting Lenders.

**1.71.** **Plan Documents** means the New Term Loan Agreement, the New Revolving Credit Agreement, the Shareholders' Agreement, the Management Equity Plan, the Registration Rights Agreement, the New Warrant Agreement, the list of proposed officers and directors of the Reorganized Debtors, the amended certificates of incorporation of the

Reorganized Debtors and the amended by-laws of the Reorganized Debtors, each in form and substance reasonably satisfactory to the Prepetition Agent and the Required Consenting Lenders, to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

  **1.72.** **Plan Supplement** means the supplemental appendix to the Plan, to be filed no later than five (5) calendar days prior to the Voting Deadline, which will contain, among other things, substantially final forms or executed copies, as the case may be, of the Plan Documents.

  **1.73.** **Prepetition Agent** means Deutsche Bank Trust Company Americas, in its capacity as administrative agent under the Prepetition Credit Agreement.

  **1.74.** **Prepetition Credit Agreement** means that certain Amended and Restated Credit Agreement, dated as of July 7, 2005, by and among EnviroSolutions Real Property Holdings, Inc., Potomac Disposal Services of Virginia Real Property Holdings, LLC, Furnace Associates, Inc., Capels Landfill, LLC, BR Landfill, LLC, River Cities Disposal, LLC, Big Run Coal and Clay Company, Inc., Ashland Investments, LLC, BR Property Holdings, Inc. and 9304 D'Arcy, LLC, as borrowers, each of the other Debtors, as guarantors, the Prepetition Agent, as administrative agent, and the lenders that are party thereto, from time to time, together with any guaranties, collateral or ancillary documents and related interest rate hedging arrangements (as amended, modified or supplemented).

  **1.75.** **Prepetition Lender Fee Claim** means any Claim for fees, expenses, costs and other charges of the Prepetition Agent and the Prepetition Lenders (including those of their respective counsel and advisors) that are provided for in the Prepetition Credit Agreement.

  **1.76.** **Prepetition Lenders** means, collectively and as of the relevant time, the lenders that are party to the Prepetition Credit Agreement and includes any "Issuing Lender" as defined in the Prepetition Credit Agreement.

  **1.77.** **Prepetition Secured Lender Claim** means any Claim against a Debtor arising under the Prepetition Credit Agreement, including (a) any Claim for interest accrued as of the Petition Date, and (b) any Prepetition Lender Fee Claim.

  **1.78.** **Priority Non-Tax Claim** means any Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; (b) a Priority Tax Claim; (c) a Fee Claim; (d) a DIP Claim; (e) a Prepetition Lender Fee Claim; or (f) any Claim for "adequate protection" of the security interests of the Prepetition Lenders authorized pursuant to the terms of the DIP Order.

  **1.79.** **Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

  **1.80.** **Professional Person** means a Person retained by order of the Bankruptcy Court in connection with the Reorganization Cases, pursuant to section 327, 328, 330 or 1103 of the Bankruptcy Code.

1.81.   **Registration Rights Agreement** means a registration rights agreement, substantially in the form set forth in the Plan Supplement, obligating the Reorganized Debtors to register for resale certain shares of New Common Stock under the Securities Act in accordance with the terms set forth in such agreement, which shall be in form and substance satisfactory to the Debtors, the Required Consenting Lenders in all material respects.

1.82.   **Reinstated or Reinstatement** means (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim in accordance with section 1124 of the Bankruptcy Code, or (b) if applicable under section 1124 of the Bankruptcy Code:  (i) curing all prepetition and postpetition defaults other than defaults relating to the insolvency or financial condition of the Debtor or its status as a debtor under the Bankruptcy Code; (ii) reinstating the maturity date of the Claim; (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing the Claim's acceleration; and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

1.83.   **Released Parties** means, collectively: (a) the Debtors, and their directors, officers, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers, and other professionals retained by such persons), each solely in its capacity as such, and to the extent such Persons occupied any such positions at any time on or after the Petition Date; (b) the Prepetition Agent, in its capacity as such, and Deutsche Bank Securities Inc., in its capacity as joint lead arranger and joint book runner under the Prepetition Credit Agreement, and their current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in its capacity as such; (c) each Prepetition Lender, in its capacity as such, that is a Releasing Party, and its current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, investment bankers and other professionals retained by such persons), each solely in its capacity as such; (d) each holder of a Second Lien Note Claim, in its capacity as such, that is a Releasing Party and its current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in its capacity as such; and (e) each of the "Agents" under the DIP Facility (as defined therein) and the DIP Lenders, in their capacities as such, and their current and former officers, partners, directors, employees, agents, members, shareholders, advisors and professionals (including any attorneys, financial advisors, and other professionals retained by such persons), each solely in its capacity as such.

1.84.   **Releasing Party** means each of, and solely in its capacity as such, (a) the Prepetition Agent, on behalf of itself, and its successors, assigns and affiliates, (b) the Prepetition Lenders, on behalf of themselves and their successors, assigns, and affiliates, (c) the holders of impaired Claims (other than Prepetition Secured Lender Claims) who (i) have not voted to reject or been deemed to reject the Plan, or (ii) have not checked the box on the applicable Ballot indicating that they opt not to grant the releases provided in the Plan, and (d) the holders of Claims unimpaired by the Plan.

**1.85.**   **Reorganization Cases** means the chapter 11 cases of the Debtors pending before the Bankruptcy Court.

**1.86.**   **Reorganized Debtor** means each Debtor on and after the Effective Date.

**1.87.**   **Required Consenting Lenders** means the Consenting Lenders holding, in the aggregate, greater than 50% of the aggregate Claims held by all Consenting Lenders, in their capacities as such.

**1.88.**   **Restructuring Support Agreement** means that certain agreement among the Debtors and certain holders of Prepetition Secured Lender Claims, dated as of March 9, 2010 and annexed as Exhibit 2 to the Disclosure Statement, together with the exhibits and attachments thereto, and as the same may be amended from time to time in accordance with the terms thereof.

**1.89.**   **Restructuring Transaction** shall have the meaning ascribed to such term in Section 7.1 of the Plan.

**1.90.**   **Ride-Through Unsecured Claim** means any prepetition unsecured Claim of a vendor of goods or supplier of service to the Debtors arising in the ordinary course of business, determined by the Debtors to be necessary to ensure the continued operations of the Debtors' businesses, and listed in the Plan Supplement, which list may be amended at any time prior to the Voting Deadline, provided that, the Debtors may add Claims to such list at any time prior to the Effective Date.

**1.91.**   **Schedule of Rejected Contracts** shall have the meaning ascribed to such term in Section 9.1(a) hereof.

**1.92.**   **Schedules of Assets and Liabilities** means the Debtors' schedules of assets and liabilities, as may be amended or supplemented, filed with the Bankruptcy Court pursuant to sections 521(1) and 1106(a)(2) of the Bankruptcy Code.

**1.93.**   **Second Lien Note Claim** means any Claim pursuant to those certain notes issued on May 22, 2008, by EnviroSolutions, Inc., BR Landfill, LLC, River Cities Disposal LLC, and Big Run Coal and Clay Company, Inc., and guaranteed by each other Debtor, other than Holdings, in the aggregate original principal amount of $20.5 million, and which notes mature by their terms on July 7, 2013, together with any guaranties, collateral or ancillary documents (as amended, modified or supplemented).

**1.94.**   **Second Lien Note Claim Distribution** means Cash in the amount of $1.2 million, provided, however, that if every holder of a Second Lien Note Claim (a) votes to accept the Plan, (b) is a Releasing Party, and (c) does not object to the confirmation of the Plan, then the Second Lien Note Claim Distribution shall mean Cash in the amount of $1.4 million.

**1.95.**   **Secured Claim** means, pursuant to section 506 of the Bankruptcy Code and section 1111 of the Bankruptcy Code, as applicable, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance, that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any

right, title or interest of a Debtor in and to property of such Debtor's Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date. The defined term Secured Claim includes any Claim that is a secured Claim pursuant to sections 506 and 553 of the Bankruptcy Code.

**1.96. Securities Act** means the United States Securities Act of 1933, as amended.

**1.97. Senior Subordinated Note Claim** means a Claim arising under the Senior Subordinated Notes, including a Claim for accrued interest thereunder.

**1.98. Senior Subordinated Note Indenture** means that certain indenture dated as of July 7, 2005 (together with any ancillary documents) between EnviroSolutions Real Property Holdings, Inc. as issuer and U.S. Bank National Association as indenture trustee.

**1.99. Senior Subordinated Notes** means the 12.50% notes issued pursuant to the Senior Subordinated Note Indenture.

**1.100. Shareholders' Agreement** means that certain agreement, filed as part of the Plan Supplement, which shall be in form and substance reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders, governing the rights, duties and obligations of shareholders of New Holdings, to be dated as of the Effective Date, executed and delivered by New Holdings and to which all holders of New Common Stock, New Warrants, and options to purchase New Common Stock, inclusive of stock issued under the Management Equity Plan, as of the Effective Date, shall be deemed to be parties.

**1.101. Unclaimed Property** means any Cash, New Common Stock or New Warrants and other property unclaimed on or after the Effective Date or date on which a Distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) and other property mailed to a Distribution Address and returned as undeliverable without a proper forwarding address; (b) funds for uncashed checks; and (c) checks (and the funds represented thereby), New Common Stock and New Warrants, not mailed or delivered because no Distribution Address to mail or deliver such property was available.

**1.102. United States Trustee** means the Office of the United States Trustee for the Southern District of New York.

**1.103. U.S. Trustee Fees** means fees arising under 28 U.S.C. § 1930(a)(6) and accrued interest thereon arising under 31 U.S.C. § 3717.

**1.104. Unsecured Claim Distribution** means Cash in the aggregate amount of $1 million.

**1.105. Voting Deadline** means the date and time set by the Bankruptcy Court by which the Claims Agent must receive all Ballots.

**B.    Interpretation; Application of Definitions and Rules of Construction.**

Unless otherwise specified, all section or exhibit references in the Plan are to the respective section in, or exhibit to, the Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained therein.  Any capitalized term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  Except for the rules of construction contained in sections 102(5) of the Bankruptcy Code, which shall not apply, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan.  Any reference in the Plan to a contract, instrument, release, indenture, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, and any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented.  The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  To the extent there is an inconsistency between any of the provisions of the Plan and any of the provisions contained in the Plan Documents to be entered into as of the Effective Date, the Plan Documents shall control.

**C.    Appendices and Plan Documents.**

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or obtain a copy of the Plan Documents by a written request sent to the following address:

> Willkie Farr & Gallagher LLP
> 787 Seventh Avenue
> New York, New York 10019
> Attention:   John C. Longmire, Esq.
>                    Shaunna D. Jones, Esq.
>                    Jennifer J. Hardy, Esq.
> Telephone:  (212) 728-8000

# ARTICLE II

## METHOD OF CLASSIFICATION OF CLAIMS
## AND INTERESTS AND GENERAL PROVISIONS

### 2.1    General Rules of Classification

Generally, a Claim is classified in a particular Class for voting and distribution purposes only to the extent the Claim qualifies within the description of that Class, and is

classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class or Classes. Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined Class and a more generally-defined Class, it shall be included in the more specifically defined Class.

### 2.2    Settlement of Certain Intercreditor Issues

Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, all claims arising prior to the Petition Date, whether known or unknown, foreseen or unforeseen, asserted or unasserted, by or against any Released Party, or holders of Claims, arising out of, relating to or in connection with the business or affairs of or transactions with the Debtors. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

### 2.3    Separate Classification of Each Debtor's Claims

Claims against each individual Debtor have been classified together solely for purposes of describing treatment under the Plan. Each Class of Claims against or Interests in a Debtor shall be treated as being in a separate sub-Class for each Debtor for the purpose of voting and receiving Plan Distributions.

### 2.4    Administrative, DIP Lender, Fee and Priority Tax Claims

Administrative Claims, DIP Lender Claims, Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified and are excluded from the Classes set forth in Article III in accordance with section 1123(a)(1) of the Bankruptcy Code.

### 2.5    Deadline for Filing Fee Claims

All proofs or applications for payment of Fee Claims must be filed with the Bankruptcy Court by the date that is forty-five (45) days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter). **Any Person that fails to file such a proof of Claim or application on or before such date shall be forever barred from asserting such Claim against the Debtors, the Reorganized Debtors or their property and the holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Claim.**

Objections to Fee Claims, if any, must be filed and served pursuant to the procedures set forth in the Confirmation Order no later than sixty-five (65) days after the Effective Date or such other date as established by the Bankruptcy Court.

### 2.6 U.S. Trustee Fees

On the Effective Date or as soon as practicable thereafter, the Debtors or Reorganized Debtors shall pay all U.S. Trustee Fees that are then due. Any U.S. Trustee Fees due thereafter shall be paid by each of the applicable Reorganized Debtors in the ordinary course until the earlier of the entry of a final decree closing the applicable Reorganization Case, or a Bankruptcy Court order converting or dismissing the applicable Reorganization Case. Any deadline for filing Administrative Claims or Fee Claims shall not apply to U.S. Trustee Fees.

### 2.7 Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 2.8 Voting Classes

If a Class contains Claims eligible to vote and no holders of Claims eligible to vote in such Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims in such Class.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

The following is the designation of the Classes of Claims and Interests under the Plan:

**3.1**  **Class 1**  shall consist of all Priority Non-Tax Claims.

**3.2**  **Class 2**  shall consist of all Prepetition Secured Lender Claims.

**3.3**  **Class 3**  shall consist of all Other Secured Claims. Each Allowed Secured Claim in Class 3 shall be considered to be a separate subclass within Class 3, and each such subclass shall be deemed to be a separate Class for purposes of the Plan.

**3.4**  **Class 4**  shall consist of all Second Lien Note Claims.

**3.5**  **Class 5**  shall consist of all Senior Subordinated Note Claims.

**3.6**  **Class 6**  shall consist of all Ride-Through Unsecured Claims.

**3.7**  **Class 7**  shall consist of all Other Unsecured Claims.

**3.8**  **Class 8**  shall consist of all Interests.

**3.9**      **Class 9** shall consist of all Intercompany Claims.

# ARTICLE IV

# NEW COMMON STOCK

### 4.1      Authorization and Issuance of New Common Stock

New Holdings shall authorize and issue one class of equity securities consisting of New Common Stock.  As of the Effective Date, [__] shares of New Common Stock shall be issued and distributed in accordance with Sections 6.1 and 7.1 and other relevant provisions of the Plan to effectuate the Restructuring Transaction; provided that recipients of such New Common Stock may elect to receive limited voting stock.   In addition, as of the Effective Date, New Holdings shall authorize such shares of New Common Stock as may be required for the Management Equity Plan and the New Warrant Agreement, in accordance with Sections 6.1 and 7.6 of the Plan.

As of the Effective Date, the New Common Stock shall be listed on the Luxembourg Stock Exchange.

### 4.2      Shareholders' Agreement and Registration Rights Agreement

(a)      All holders of the New Warrants  and New Common Stock (including New Common Stock issued upon exercise of the New Warrants or pursuant to the Management Equity Plan) shall be deemed, in their capacities as holders of such securities, to be parties to the Shareholders' Agreement and shall be bound thereby.

(b)      The Shareholders' Agreement shall provide, *inter alia*, that solely for the purposes of voting for directors of New Holdings, holders of New Warrants shall be entitled to vote as if such New Warrants were fully exercised.

(c)      Certain holders of the New Common Stock shall be entitled to registration rights pursuant to the Registration Rights Agreement.  On the Effective Date, New Holdings shall enter into and deliver the Registration Rights Agreement and Shareholders Agreement, in substantially the form included in the Plan Supplement, to each entity that is intended to be a party thereto and such agreements shall be deemed to be valid, binding and enforceable in accordance with their respective terms, and each holder of New Common Stock shall be bound thereby, in each case without the need for execution by any party thereto other than New Holdings.  Holders of New Warrants shall be deemed parties to the Registration Rights Agreement and shall be bound thereby.

### 4.3      New Warrants

New Holdings shall issue New Warrants, pursuant to the New Warrant Agreement, to the Non-Electing Prepetition Lenders in accordance with Sections 6.1 and 7.1 of the Plan.  Pursuant to the New Warrant Agreement, New Holdings will issue New Warrants to the Non-Electing Prepetition Lenders to purchase shares of New Common Stock (provided that

recipients of the New Warrants may elect to receive New Warrants to purchase limited voting stock subject to the Shareholders' Agreement and the organization documents of New Holdings) at a strike price equal to $0.01 per share. The number of New Warrants issued to each Non-Electing Prepetition Lender will be equal to the number of shares in excess of 4.9% of all the shares of New Common Stock that would otherwise have been issued to the Non-Electing Prepetition Lender had such Non-Electing Prepetition Lender elected to comply with all applicable requirements of N.J.S.A. 13:1E-126 et seq. and its implementing regulations, N.J.A.C. 7:26-16.1 et seq. Upon an issuance of any dividends with respect to the New Common Stock, additional New Warrants will be issued to holders in an amount equal to the value of such dividends. The number of shares of New Common Stock issuable upon the exercise of the New Warrants shall be subject to adjustment upon the occurrence of splits and reverse splits of the New Common Stock and dividend payments made to holders of New Common Stock.

## ARTICLE V

## TREATMENT OF UNIMPAIRED CLASSES

### 5.1     DIP Lender Claims

The DIP Lender Claims shall be deemed to be Allowed Claims under the Plan. The DIP Lender Claims shall be satisfied in full, at the Debtors' option, by: (a) the conversion on the Effective Date of the DIP Facility into the New Revolving Credit Facility in accordance with the terms and conditions of the DIP Facility and the New Revolving Credit Facility; or (b) termination of all commitments, payment in full in Cash of all outstanding obligations and cash collateralization, return or backstopping of all letters of credit issued thereunder.

### 5.2     Other Secured Claims – Class 3

Subject to the provisions of sections 502(b)(3) and 506(d) of the Bankruptcy Code, each holder of an Allowed Other Secured Claim shall receive, at the Reorganized Debtors' option and to the extent such Claim is secured by collateral in the possession, following the Restructuring Transaction, of the Reorganized Debtors: (a) the Reinstatement of such Claim; (b) 100% of the Allowed amount of such Claim in Cash; (c) 100% of the net proceeds of the sale of the relevant collateral; (d) the return of the relevant collateral; or (e) such other, less favorable treatment as may be agreed between such holder and the Reorganized Debtors. Such Distribution shall be made on or as soon as reasonably practicable after the Distribution Date (subject, if applicable, to the Reorganized Debtors' receipt of the proceeds of the sale of the relevant collateral). To the extent a Claim is partially an Allowed Other Secured Claim based on an offset right and partially an Allowed Claim of another type, such Other Secured Claim shall be deemed to have been (x) set off only to the extent of the amount of the Allowed, liquidated, nondisputed, non-contingent claim owing to the relevant Debtor, and (y) a Claim classified in another relevant Class for any excess of such Claim over the amount so set off. If a Claim is fully an Allowed Other Secured Claim based on an offset right, the allowance of such Claim shall not affect any obligations or liabilities due and payable (at such time) to the Debtors or Reorganized Debtors that are in an amount in excess of the amount offset and the payment of all amounts due and owing as of the Effective Date to the Debtors or Reorganized Debtors, and the

turnover of any property of the Debtors or Reorganized Debtors held by such claimant on account of any unliquidated, disputed or contingent right of setoff shall be a precondition of the allowance of such Other Secured Claim.

### 5.3 Administrative Claims

(a) **Time for Filing Administrative Claims.** The holder of an Administrative Claim, other than the holder of:

    (1)    a Fee Claim;

    (2)    an Administrative Claim that has been Allowed on or before the Effective Date;

    (3)    an Administrative Claim for an expense or liability incurred and payable in the ordinary course of business by a Debtor;

    (4)    an Administrative Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtors pursuant to an order of the Bankruptcy Court;

    (5)    an Administrative Claim held by a current officer, director or employee of the Debtors for indemnification, contribution, or advancement of expenses pursuant to (A) any Debtor's operating agreement, certificate of incorporation, by-laws, or similar organizational document or (B) any indemnification or contribution agreement approved by the Bankruptcy Court;

    (6)    an Administrative Claim arising, in the ordinary course of business, out of the employment by one or more Debtors of an individual from and after the Petition Date, but only to the extent that such Administrative Claim is solely for outstanding wages, commissions, accrued benefits, or reimbursement of business expenses;

    (7)    an Intercompany Claim; or

    (8)    U.S. Trustee Fees,

must file with the Bankruptcy Court and serve on the (i) Debtors or the Reorganized Debtors, as applicable; (ii) the Claims Agent; and (iii) the Prepetition Agent, proof of such Administrative Claim **within thirty (30) days after the Effective Date** (the "**Administrative Bar Date**").  Such proof of Administrative Claim must include at a minimum:  (A) the name of the applicable Debtor that is purported to be liable for the Administrative Claim and if the Administrative Claim is asserted against more than one Debtor, the exact amount asserted to be owed by each such Debtor; (B) the name of the holder of the Administrative Claim; (C) the amount of the

Administrative Claim; (D) the basis of the Administrative Claim; and (E) supporting documentation for the Administrative Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE CLAIM TIMELY AND PROPERLY SHALL RESULT IN THE ADMINISTRATIVE CLAIM BEING FOREVER BARRED AND DISALLOWED.**

      (b)    **Treatment of Administrative Claims.** Each holder of an Allowed Administrative Claim shall be paid 100% of the unpaid Allowed amount of such Claim in Cash on the Distribution Date. Notwithstanding the immediately preceding sentence, Allowed Administrative Claims incurred in the ordinary course of business and on ordinary business terms unrelated to the administration of the Reorganization Cases (such as Allowed trade and vendor Claims) shall be paid, at the Debtors' or Reorganized Debtors' option, in accordance with ordinary business terms for payment of such Claims. Notwithstanding the foregoing, the holder of an Allowed Administrative Claim may receive such other, less favorable treatment as may be agreed upon by the claimant and the Debtors or Reorganized Debtors.

### 5.4      Priority Non-Tax Claims – Class 1

Each holder of an Allowed Priority Non-Tax Claim shall receive 100% of the unpaid allowed amount of such Claim in Cash on the Distribution Date. Notwithstanding the foregoing, the holder of an Allowed Priority Non-Tax Claim may receive such other, less favorable treatment as may be agreed upon by the claimant and the Debtors or Reorganized Debtors.

### 5.5      Priority Tax Claims

Each holder of an Allowed Priority Tax Claim shall receive, at the Debtors' or Reorganized Debtors' option, either (a) on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Priority Tax Claim becomes an Allowed Claim, Cash in an amount equal to such Claim, or (b) deferred Cash payments following the Effective Date, over a period ending not later than five (5) years after the Petition Date, in an aggregate amount equal to the Allowed amount of such Priority Tax Claim (with any interest to which the holder of such Priority Tax Claim may be entitled to be calculated in accordance with section 511 of the Bankruptcy Code); provided, however, that all Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as they become due. Notwithstanding the foregoing, the holder of an Allowed Priority Tax Claim may receive such other, less favorable treatment as may be agreed upon by the claimant and the Debtors or Reorganized Debtors.

### 5.6      Fee Claims

A Fee Claim in respect of which a final fee application has been properly filed and served pursuant to Section 2.5 of the Plan shall be payable by the Reorganized Debtors to the extent approved by a Final Order of the Bankruptcy Court. On or prior to the Effective Date, each holder of a Fee Claim shall submit to the Debtors estimates of any Fee Claims that may

reasonably accrue prior to the Effective Date that have not been included in a monthly fee statement or interim fee application submitted by such Professional Person (collectively, the "**Estimated Fee Claims**").  On the Effective Date, the Debtors or Reorganized Debtors shall reserve and hold in an account Cash in an amount equal to the aggregate amount of each unpaid Estimated Fee Claim as of the Effective Date (minus any unapplied retainers).  Such Cash shall be disbursed solely to the holders of Allowed Fee Claims as soon as reasonably practicable after a Fee Claim becomes an Allowed Claim.  Upon payment of an Allowed Fee Claim, any remaining Cash reserved on account of an Estimated Fee Claim shall be released to the Reorganized Debtors.  Any other Cash remaining in such account shall be reserved until all other applicable Allowed Fee Claims have been paid in full or all remaining applicable Fee Claims have been Disallowed or not otherwise permitted by Final Order, at which time any remaining Cash held in reserve with respect to the Estimated Fee Claims become the sole and exclusive property of the Reorganized Debtors.

### 5.7 Ride-Through Unsecured Claims – Class 6

Each Allowed Ride-Through Unsecured Claim shall be Reinstated as of the Effective Date as an obligation of the Reorganized Debtors, and shall be paid in accordance with the ordinary course terms for such Claim.

## ARTICLE VI

## TREATMENT OF IMPAIRED CLASSES

### 6.1 Prepetition Secured Lender Claims – Class 2

The Prepetition Secured Lender Claims shall be deemed Allowed Claims in the amount of not less than $198.3 million.  On the Effective Date, each Prepetition Lender shall receive, in full and final satisfaction of its Prepetition Secured Lender Claim:

(a)     its pro rata share of the New Term Loan Obligations pursuant to the New Term Loan Agreement;

(b)     payment in Cash of its pro rata share of the Prepetition Lender Fee Claims to the extent that such Claims were not paid prior to the Effective Date in accordance with the terms of the DIP Order; and

(c)     if such holder of a Prepetition Secured Lender Claim:

        (1)     is an Other Prepetition Lender or an Electing Prepetition Lender, such holder's pro rata share (adjusted for any reallocation on account of New Warrants issued pursuant to subparagraph (2) below) of 100% of the New Common Stock, subject to dilution by the New Common Stock issued pursuant to the Management Equity Plan; or

(2)    is a Non-Electing Prepetition Lender, then (x) 4.9% of the New Common Stock issued pursuant to the Plan, subject to dilution by the New Common Stock issued pursuant to the Management Equity Plan and upon the exercise of any New Warrant, plus (y) a number of New Warrants such that if all New Warrants were exercised, it would, when combined with the New Common Stock distributed to such holder under clause (x) of this paragraph, result in the holder thereof holding its pro rata share of 100% of the New Common Stock (subject to the dilution referred to in clause (x) hereof).

### 6.2    Second Lien Note Claims – Class 4

The Second Lien Note Claims shall be deemed Allowed in the aggregate amount of $23.3 million, plus any interest accrued but unpaid as of the Petition Date.  Except to the extent that a holder of an Allowed Second Lien Note Claim agrees to less favorable treatment, the holder of an Allowed Second Lien Note Claim shall, in accordance with section 510(a) of the Bankruptcy Code and the subordination provisions of the relevant agreements, receive its pro rata share of the Second Lien Note Claim Distribution, in full and final satisfaction of such Allowed Second Lien Note Claim.

### 6.3    Senior Subordinated Note Claims – Class 5

Pursuant to section 510 of the Bankruptcy Code and the provisions of the Senior Subordinated Note Indenture, holders of Senior Subordinated Note Claims shall not receive any Distribution on account of such Claims and any Distribution to which they would have been entitled on account of such Claims shall (a) be distributed to the holders of the Prepetition Secured Lender Claims, in part, and (b) form a portion of the Second Lien Note Claim Distribution, in part.

### 6.4    Other Unsecured Claims – Class 7

Except to the extent that a holder of an Allowed Other Unsecured Claim agrees to less favorable treatment, the holder of an Allowed Other Unsecured Claim shall receive payment in Cash of its pro rata share of the Unsecured Claim Distribution in full and final satisfaction of such Allowed Other Unsecured Claim in accordance with Section 7.9 hereof.

### 6.5    Interests – Class 8

Each holder of an Interest shall receive no Distribution on account of such Interest.  All Interests in Holdings, including all options and warrants, if any, to purchase Interests in Holdings, shall be deemed canceled as of the Effective Date.  All holders of Interests shall be deemed to have rejected the Plan.  Notwithstanding anything to the contrary herein, all Interests in Debtors other than Holdings shall not be canceled, and shall continue in place following the Effective Date, solely for the purpose of maintaining the existing corporate structure of the Debtors.

**6.6      Intercompany Claims – Class 9**

Each Intercompany Claim may be reinstated as of the Effective Date or, at the Debtors' or Reorganized Debtors' option, be cancelled or compromised, and no distribution shall be made on account of such Claims, provided that to the extent any Intercompany Claims are compromised, in no event will the beneficiary receive less than it would have received if it were a Class 7 Other Unsecured Claim.

## ARTICLE VII

## MEANS OF IMPLEMENTATION

**7.1      Restructuring Transaction**

On or as of the Effective Date, the Distributions provided for under the Plan shall be effectuated pursuant to the following transactions (collectively, the "**Restructuring Transaction**"):

(a)      pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and except as otherwise provided in the Plan, the property of each Estate shall vest in the applicable Reorganized Debtor, free and clear of all Claims, liens, encumbrances, charges, and other Interests, except as provided in the Plan, the New Term Loan Agreement, the New Revolving Credit Agreement, the other Plan Documents or the Confirmation Order.  The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided herein;

(b)      New Holdings shall issue the New Common Stock and the New Warrants, if any, to holders of Prepetition Secured Lender Claims, pursuant to the terms of the Plan and enter into the Shareholders' Agreement, New Warrant Agreement and the Registration Rights Agreement;

(c)      the Debtors shall consummate the Plan by (i) making Distributions of the New Common Stock, New Warrants and Cash, (ii) assuming the New Term Loan Obligations, in each case in accordance with the terms of the Plan, and (iii) if applicable, entering into the New Revolving Credit Agreement;

(d)      the releases provided for herein, which are an essential element of the Restructuring Transaction, shall become effective; and

(e)      the holders of the Prepetition Secured Lender Claims shall be deemed to have consented to the Second Lien Note Claim Distribution and the Distributions provided hereunder on account of Ride-Through Unsecured Claims and Other Unsecured Claims.

### 7.2 Corporate Action

The Debtors shall continue to exist as the Reorganized Debtors on and after the Effective Date, with all of the powers of corporations or limited liability companies, as the case may be, under applicable law. The certificates of incorporation and by-laws, or operating agreements, as applicable, of each Reorganized Debtor shall, *inter alia,* prohibit the issuance of nonvoting stock to the extent required by section 1123(a)(6) of the Bankruptcy Code. The adoption of any new or amended and restated operating agreements, certificates of incorporation and by-laws of each Reorganized Debtor and the other matters provided for under the Plan involving the corporate or entity structure of the Debtors or the Reorganized Debtors, as the case may be, or limited liability company or corporate action to be taken by or required of the Debtors or the Reorganized Debtors, as the case may be, shall be deemed to have occurred and be effective as provided herein and shall be authorized and approved in all respects, without any requirement of further action by members, stockholders or directors of the Debtors or the Reorganized Debtors, as the case may be. Without limiting the foregoing, the Reorganized Debtors shall be authorized, without any further act or action required, to issue all New Common Stock and any instruments required to be issued hereunder, to undertake, consummate and execute and deliver any documents relating to the Restructuring Transaction and to undertake any action or execute and deliver any document contemplated under the Plan. The Confirmation Order shall provide that it establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for each of the Debtors and the Reorganized Debtors to undertake any and all acts and actions required to implement or contemplated by the Plan, including without limitation, the specific acts or actions or documents or instruments identified in this Section 7.2, and no board, member or shareholder vote shall be required with respect thereto.

### 7.3 Effectuating Documents and Further Transactions

The Debtors and the Reorganized Debtors shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, so long as such documents, contracts, instruments and other agreements are wholly consistent with the Restructuring Support Agreement.

### 7.4 New Revolving Credit Facility

On the Effective Date, subject to the terms of the New Revolving Credit Facility, the DIP Facility shall be converted into the New Revolving Credit Facility and the Reorganized Debtors shall have access to the New Revolving Credit Facility subject to the terms thereof.

### 7.5 Directors of the Reorganized Debtors

As of the Effective Date, the boards of directors of the Reorganized Debtors shall consist of those individuals selected in accordance with the terms of the Restructuring Support Agreement and set forth in a supplement filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing. The members of the board of directors of each

Debtor prior to the Effective Date, in their capacities as such, shall be deemed to have resigned as of the Effective Date, and shall have no continuing obligations to the Reorganized Debtors on or after the Effective Date. Following the occurrence of the Effective Date, the board of directors of each Reorganized Debtor may be replaced by such individuals as are selected in accordance with the organizational documents of such Reorganized Debtor.

**7.6**      **Management Incentive Plan and Management Equity Plan**

(a)      As of the Effective Date, New Holdings shall adopt and implement the Management Equity Plan. The terms and conditions of the Management Equity Plan are described in more detail in Article V of the Disclosure Statement, and shall be consistent with the term sheet that is an exhibit to the Restructuring Support Agreement.

(b)      As of the Effective Date, the obligations comprising the Management Incentive Plan shall be deemed to be assumed by the Reorganized Debtors.

**7.7**      **General Distribution Mechanics**

(a)      **Distributions on Account of Allowed Claims Only.** Notwithstanding anything herein to the contrary, no Distribution shall be made on account of a Disputed Claim until such Disputed Claim becomes an Allowed Claim.

(b)      **No Recourse**. No claimant shall have recourse to the Reorganized Debtors (or any property thereof), other than with regard to the enforcement of rights or Distributions under the Plan.

(c)      **Method of Cash Distributions**. Any Cash payment to be made pursuant to the Plan will be in U.S. dollars and may be made by draft, check, wire transfer, in the sole discretion of the Debtors or the Reorganized Debtors, or as otherwise required or provided in any relevant agreement or applicable law.

(d)      **Distributions on Non-Business Days**. Any payment or Distribution due on a day other than a Business Day may be made, without interest, on the next Business Day.

(e)      **No Distribution in Excess of Allowed Amount of Claim**. Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall receive in respect of such Claim any Distribution in excess of the Allowed amount of such Claim. Except with respect to the DIP Lender Claims and, if such Claim is oversecured, an Other Secured Claim, no Claim for postpetition interest shall be Allowed.

(f)      **Disputed Payments.** If any dispute arises as to the identity of a holder of an Allowed Claim who is to receive any Distribution, the Reorganized Debtors may, in lieu of making such Distribution to such Person, make such Distribution into a segregated account until the disposition thereof shall be determined by Court order or by written agreement among the interested parties.

### 7.8 Unclaimed Property

The Reorganized Debtors, Distribution Agent, the DIP Agent or the Prepetition Agent, as applicable, shall hold all Unclaimed Property (and all interest, dividends, and other distributions thereon), for the benefit of the holders of Claims entitled thereto under the terms of the Plan.  Except with respect to Unclaimed Property intended for holders of Other Unsecured Claims, at the end of one (1) year following the relevant Distribution Date of particular Cash or New Common Stock, the holders of Allowed Claims theretofore entitled to Unclaimed Property held pursuant to this section shall be deemed to have forfeited such property, whereupon all right, title and interest in and to such property shall immediately and irrevocably revest in the Reorganized Debtors, such holders shall cease to be entitled thereto and:  (a) any such Unclaimed Property that is Cash (including Cash interest, maturities, dividends and the like) shall be property of the Reorganized Debtors free of any restrictions thereon; and (b) any New Common Stock that is Unclaimed Property shall be held as treasury shares.  Unclaimed Property relating to Other Unsecured Claims shall be distributed in accordance with Section 7.9 of the Plan.  The Reorganized Debtors, the Distribution Agent, the DIP Agent and the Prepetition Agent shall have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Debtors' books and records, proofs of Claim filed against the Debtors, or relevant registers maintained for Prepetition Secured Lender Claims.

### 7.9 Distributions to Holders of Other Unsecured Claims.

(a) **Funding of the Claims Distribution Fund.**  On the Effective Date or as soon as practicable thereafter, a fund shall be created by the Reorganized Debtors, for the benefit and payment of Allowed Other Unsecured Claims (the "**Claims Distribution Fund**").  The Claims Distribution Fund shall be created as a segregated, interest-bearing account of the Reorganized Debtors, and the Debtors or Reorganized Debtors shall deposit Cash equal to the Unsecured Claim Distribution into such fund on, or as soon as reasonably practicable after, the Effective Date.  All Distributions to holders of Allowed Other Unsecured Claims shall be made solely from the Claims Distribution Fund.  The Debtors shall have no obligation to fund Distributions to holders of Allowed Other Unsecured Claims beyond the funding of the Claims Distribution Fund as provided in this Section.  Funds in the Claims Distribution Fund shall be distributed to holders of Allowed Other Unsecured Claims pursuant to the provisions of this Section.  The Distribution Agent shall maintain an accurate register (including based on information provided by the Claims Agent) of Other Unsecured Claims and the status of each.

(b) **Disputed Claims Reserve.**  The Distribution Agent shall set aside and reserve, from the funds in the Claims Distribution Fund, for the benefit of each holder of a Disputed Other Unsecured Claim, an amount equal to the Distribution from the Claims Distribution Fund to which the holder of such Disputed Claim would be entitled if such Disputed Claim were an Allowed Claim, in an amount equal to (i) the amount of such Claim as estimated by the Bankruptcy Court pursuant to an Estimation Order, (ii) an amount mutually agreed between the Distribution Agent and the holder of such Disputed Claim, or (iii) if no agreement or Estimation Order has been entered with respect to such Claim, the greater of (A) the amount listed in the Schedules of Assets and Liabilities and (B) the amount set forth in a proof of claim or application for payment filed with the Bankruptcy Court or Claims Agent, as applicable, or

pursuant to an order of the Bankruptcy Court entered in the Reorganization Cases, in each case with respect to such Claim. Such reserved amounts, collectively, shall constitute the "**Disputed Claims Reserve**" and the difference between (y) the amount so reserved for each such Claim and (z) the amount of federal, state and local taxes paid by the Distribution Agent with respect to such Claim shall constitute the maximum Distribution amount to which the holder of such Claim may ultimately become entitled from the Claims Distribution Fund if such holder's Claim (or a portion thereof) becomes an Allowed Claim. The balance of the funds in the Claims Distribution Fund, after the costs of distribution of such funds, shall be deemed to be "**Distributable Cash**."

(c)     **Distributions to Holders of Allowed Other Unsecured Claims.**

(1)     As soon as reasonably practicable after the Effective Date, the Distribution Agent shall distribute to each holder of an Allowed Other Unsecured Claim such holder's pro rata share of Distributable Cash. The date of such Distributions shall be the "**Initial Fund Distribution Date**".

(2)     No Distributions shall be made from the Claims Distribution Fund with respect to a Disputed Other Unsecured Claim until the resolution of such dispute by agreement with the Reorganized Debtors or Final Order. On or as soon as reasonably practicable after the first Business Day of the next calendar quarter (each such date, a "**Periodic Fund Distribution Date**") after a Disputed Other Unsecured Claim becomes an Allowed Claim, the Distribution Agent shall distribute to the holder thereof Cash, from the Disputed Claims Reserve, in an amount equal to the aggregate amount of Cash that would have been distributed to such holder in respect of such Claim had such Claim been an Allowed Other Unsecured Claim, in the amount in which it is ultimately allowed, on the Initial Fund Distribution Date and any previously occurring Periodic Fund Distribution Dates. Any holder of a Other Unsecured Claim whose Claim is so allowed after the tenth (10th) day prior to the next Periodic Fund Distribution Date shall receive its initial Distribution on the next succeeding Periodic Fund Distribution Date following such Periodic Fund Distribution Date. Subsequent distributions to holders of such Claims shall be made in accordance with subsection (c)(4) of this Section.

(3)     To the extent a Disputed Claim becomes Disallowed or is reclassified, any Cash previously reserved for such portion of such Disputed Other Unsecured Claim shall become Distributable Cash. Any Unclaimed Property distributed to holders of Allowed Other Unsecured Claims from the Claims Distribution Fund shall be deemed Distributable Cash at the end of one (1) year following the date which such Cash was initially distributed, and the holders of Allowed Claims theretofore entitled to such Unclaimed Property shall be deemed to have forfeited such property.

(4)     On each Periodic Fund Distribution Date, the Distribution Agent shall distribute to each holder of an Allowed Other Unsecured Claim each such holder's pro rata share of the Distributable Cash remaining on such date. Periodic Fund Distribution Dates shall continue to occur until (Y) all Disputed Other Unsecured Claims have been resolved; and (Z) all Unclaimed Property or other assets that may become

Distributable Cash pursuant to Section 7.9(c)(3) or other applicable provisions hereof shall have become Distributable Cash.

(5)     On the first Business Day that is ten (10) days after the date on which all of the events described in clauses (Y) and (Z) of subsection 7.9(c)(4) hereof shall have occurred, or such later date as is reasonably practicable, the Distribution Agent shall distribute (each such Distribution, a "**Final Fund Distribution**") to each holder of an Allowed Other Unsecured Claim such holder's pro rata share of the remaining Distributable Cash.

(d)     **Minimum Distributions to Holders of Allowed Other Unsecured Claims.**  Notwithstanding anything to the contrary herein, no Distribution, other than a Final Fund Distribution, shall be made from the Claims Distribution Fund to any holder of an Allowed Other Unsecured Claim, unless the amount of such Distribution is not less than one hundred dollars ($100), and no Distributions to holders of Allowed Other Unsecured Claims shall be made on any Periodic Fund Distribution Date if the aggregate Distributions to be made from the Claims Distribution Fund on such date would not exceed $10,000.  Notwithstanding anything to the contrary herein, if the aggregate Final Fund Distribution does not exceed $5,000, such aggregate amount shall not be distributed, but instead revert to the Reorganized Debtors.

### 7.10     Withholding Taxes

Any federal or state withholding taxes or other amounts required to be withheld under any applicable law shall be deducted and withheld from any Distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

### 7.11     Fractional Plan Securities

Notwithstanding any other provision of the Plan, only whole numbers of New Warrants and shares of New Common Stock shall be issued.  When any Distribution on account of an Allowed Claim would otherwise result in the issuance of a number of New Warrants or shares of New Common Stock that is not a whole number, the actual Distribution of such New Warrants or New Common Stock shall be rounded to the next higher or lower number as follows:  (a) fractions equal to or greater than ½ shall be rounded to the next higher whole number; and (b) fractions less than ½ shall be rounded to the next lower whole number.  The total number of New Warrants or shares of the New Common Stock shall be adjusted as necessary to account for the rounding provided for herein.  No consideration will be provided in lieu of fractional shares that are rounded down.  Neither the Reorganized Debtors, the Distribution Agent, the DIP Agent, nor the Prepetition Agent shall have any obligation to make a distribution that is less than one (1) share of New Common Stock, one (1) New Warrant, or $10.00 in Cash.  Fractional New Warrants or shares of New Common Stock that are not distributed in accordance with this Section 7.11 shall be returned to New Holdings and cancelled.

### 7.12 Exemption from Certain Transfer Taxes

To the fullest extent permitted by applicable law, all sale transactions consummated by the Debtors and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including the transfers effectuated under the Plan, the sale by the Debtors of any owned property pursuant to section 363(b) or 1123(b)(4) of the Bankruptcy Code, any assumption, assignment, and/or sale by the Debtors of their interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, and the creation, modification, consolidation or recording of any mortgage pursuant to the terms of the Plan, the New Revolving Credit Agreement or the New Term Loan Agreement, shall constitute a "transfer under a plan" within the purview of section 1146 of the Bankruptcy Code, and shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

### 7.13 Exemption from Securities Laws

The issuance of New Common Stock and the New Warrants pursuant to the Plan (including the New Common Stock issued under the Management Equity Plan) shall be exempt from any securities laws registration requirements to the fullest extent permitted by section 1145 of the Bankruptcy Code.

### 7.14 Setoffs and Recoupments

Each Reorganized Debtor, or such entity's designee as instructed by such Reorganized Debtor, may, pursuant to section 553 of the Bankruptcy Code or applicable non-bankruptcy law, set off and/or recoup against any Allowed Claim, and the distributions to be made pursuant to the Plan on account of such Allowed Claim, any and all claims, rights and causes of action that a Reorganized Debtor or its successors may hold against the holder of such Allowed Claim after the Effective Date; provided, however, that neither the failure to effect a setoff or recoupment nor the allowance of any Claim hereunder will constitute a waiver or release by a Reorganized Debtor or its successor of any and all claims, rights and causes of action that a Reorganized Debtor or its successor may possess against such holder.

### 7.15 Insurance Preservation and Proceeds

Nothing in the Plan, including any releases, shall diminish or impair the enforceability of any policies of insurance that may cover claims against the Debtors or any other Person. Holders of Claims which are eligible to be satisfied, in whole or in part, through any such policy shall be obligated, as a condition to receiving any Distributions under the Plan, to seek recovery or assist the Debtors in seeking recovery under such policies with regard to such Claims.

### 7.16 Solicitation of Debtors

Notwithstanding anything to the contrary herein, each Debtor that would otherwise be entitled to vote to accept or reject this Plan as a holder of a Claim against or Interest

in another Debtor shall not be solicited for voting purposes, and such Debtor will be deemed to have voted to accept this Plan.

## ARTICLE VIII

## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### 8.1     Discharge

(a)     **Scope**.  Except as otherwise provided in the Plan or Confirmation Order, in accordance with section 1141(d)(1) of the Bankruptcy Code, entry of the Confirmation Order acts as a discharge, effective as of the Effective Date, of all debts of, Claims against, liens on, and Interests in the Debtors, their assets or properties, which debts, Claims, liens, and Interests arose at any time before the entry of the Confirmation Order.  The discharge of the Debtors shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.  On the Effective Date, as to every discharged Claim and Interest, any holder of such Claim or Interest (including, without limitation, any options to purchase Old Common Stock) shall be precluded from asserting against the Debtors, the Reorganized Debtors or the assets or properties of any of them, any other or further Claim or Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

(b)     **Injunction**.  In accordance with section 524 of the Bankruptcy Code, the discharge provided by this section and section 1141 of the Bankruptcy Code, *inter alia,* acts as an injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims, liens and Interests discharged hereby.

(c)     **Release of Liens and Surrender of Securities**.  Unless a particular Claim is Reinstated: (i) each holder of a Secured Claim or a Claim that is purportedly secured (including an Other Secured Claim, or a Second Lien Note Claim, but not including a DIP Lender Claim or a Prepetition Secured Lender Claim) shall, on or immediately before the Effective Date (or, in the case of Other Secured Claims treated pursuant to Sections 5.2(c) or 5.2(d) of the Plan, on or prior to the date of the sale or return of the relevant collateral) and as a condition to receiving any Distribution hereunder:  (A) turn over and release to the Debtors, or the Reorganized Debtors, as applicable, any and all property of the Debtors or the Estates that secures or purportedly secures such Claim; and (B) execute such documents and instruments as the Debtors or the Reorganized Debtors require to evidence such claimant's release of such property; and (ii) on the Effective Date (or such other date described in this subsection), all claims, right, title and interest in such property shall revert to the Reorganized Debtors free and clear of all Claims and Interests, including (without limitation) liens, charges, pledges, encumbrances and/or security interests of any kind.  All liens of the holders of such Claims or Interests in property of the Debtors, the Estates, and/or the Reorganized Debtors shall be deemed to be canceled and released as of the Effective Date (or such other date described in this subsection).  Each holder of any Claim or Interest not referenced in the immediately preceding sentence (other than the holder of a Claim that is to be Reinstated pursuant to the Plan, a DIP

Lender Claim or a Prepetition Secured Lender Claim) shall surrender to the Reorganized Debtors any note, instrument, document, certificate, subordinated note, agreement, certificated security or other item evidencing such Claim. No Distribution hereunder shall be made to or on behalf of any holder of a Claim (except as provided in the immediately preceding sentence) unless and until such holder executes and delivers to the Reorganized Debtors such release and surrender of liens or other items described above, or demonstrates non-availability of such items to the satisfaction of the Reorganized Debtors, including requiring such holder to post a lost instrument or other indemnity bond, among other things, to hold the Debtors and the Reorganized Debtors harmless in respect of such lien, instrument or other item described above and any Distributions made in respect thereof. The Reorganized Debtors may reasonably require the holder of such Claim to hold the Reorganized Debtors harmless up to the amount of any Distribution made in respect of such unavailable note, instrument, document, certificate, subordinated note, agreement, certificated security or other item evidencing such Claim. Any such holder that fails to execute and deliver such release of liens or other items described above or satisfactorily explain their non-availability to the Reorganized Debtors, as applicable, within 180 days of the Effective Date shall be deemed to have no further Claim against the Debtors or the Reorganized Debtors or any of their property in respect of such Claim and shall not participate in any Distribution hereunder, and the Distribution that would otherwise have been made to such holder shall be treated as Unclaimed Property. Notwithstanding the immediately preceding sentence, except with respect to the Second Lien Note Claims, any such holder of a Disputed Claim shall not be required to execute and deliver such release of liens until ten (10) days after such Claim becomes an Allowed Claim or is Disallowed. To the extent any holder of a Claim described in the first sentence of this subsection fails to release the relevant liens as described above, the Reorganized Debtors may act as attorney-in-fact, on behalf of the holders of such liens, to provide any releases as may be required by any lender under the New Revolving Credit Facility or for any other purpose. Notwithstanding anything to the contrary in this Section 8.1(c), subject to the conversion on the Effective Date of the DIP Facility into the New Revolving Credit Facility in accordance with the terms and conditions of the DIP Facility, the collateral securing the DIP Lender Claims shall, on and after the Effective Date, secure obligations under the New Revolving Credit Facility and the New Term Loan Obligations.

(d)     **Cancellation of Stock/ Instruments**. All Interests in Holdings, the Prepetition Credit Agreement (including any related security and guaranty agreements, interest rate agreements and commodity hedging agreements), the Senior Subordinated Notes, the Second Lien Notes and any other note, bond, indenture or other instrument or document evidencing or creating any indebtedness or obligation of the Debtors shall be deemed canceled on the Effective Date.

## 8.2     Revesting and Vesting

Except as otherwise provided in the Plan, on the Effective Date all property comprising the Estates (including, subject to any release provided for herein, any claim, right or cause of action which may be asserted by or on behalf of the Debtors, whether relating to the avoidance of preferences or fraudulent transfers under sections 544, 547, 548, 549 and/or 550 of the Bankruptcy Code or otherwise) shall be vested in the Reorganized Debtors free and clear of all Claims, liens, charges, encumbrances and interests of creditors and equity security holders,

except for the rights to Distribution afforded to holders of certain Claims under the Plan. After the Effective Date, the Reorganized Debtors shall have no liability to holders of Claims and Interests other than as provided for in the Plan. As of the Effective Date, the Reorganized Debtors may operate each of their respective businesses and use, acquire and settle and compromise claims or interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order. Except as otherwise provided in the Plan, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by order of the Bankruptcy Court, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any claims, rights and causes of action that the Debtors or the Estates may hold. The Reorganized Debtors or any successor thereto may pursue those claims, rights and causes of action in accordance with what is in its best interests and in accordance with its fiduciary duties.

### 8.3    Survival of Certain Indemnification Obligations

The obligations of the Debtors to indemnify individuals who serve or served on or after the Petition Date as their respective directors, officers, agents, employees, representatives, and Professional Persons retained by the Debtors, regardless of whether the underlying claims for which indemnification is sought, are released pursuant to the Plan, pursuant to the Debtors' operating agreements, certificates of incorporation, by-laws, applicable statutes and preconfirmation agreements in respect of all present and future actions, suits and proceedings against any of such officers, directors, agents, employees, representatives, and Professional Persons retained by the Debtors, based upon any act or omission related to service with, for, or on behalf of the Debtors on or before the Effective Date, as such obligations were in effect at the time of any such act or omission, shall not be discharged or impaired by confirmation or consummation of the Plan but shall survive unaffected by the reorganization contemplated by the Plan and shall be performed and honored by the Reorganized Debtors regardless of such confirmation, consummation and reorganization.

### 8.4    Release of Claims

(a)    **Satisfaction of Claims and Interests**. The treatment to be provided for respective Allowed Claims or Interests pursuant to the Plan shall be in full satisfaction, settlement, release and discharge of such respective Claims or Interests.

(b)    **Debtor Releases**. *Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, each Debtor and debtor in possession, and any person seeking to exercise the rights of the Debtors' estates, including without limitation, the Reorganized Debtors, any successor to the Debtors, or any representative of the Debtors' estates appointed or selected pursuant to sections 1103, 1104, or 1123(b)(3) of the Bankruptcy Code or under chapter 7 of the Bankruptcy Code, shall be deemed to forever release, waive and discharge all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities (other than all rights, remedies and privileges to enforce the Plan, the Plan Supplement and the contracts, instruments, releases, indentures and other agreements or documents (including,*

*without limitation, the Plan Documents) delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise that are based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the parties released pursuant to this Section 8.4(b), the Reorganization Cases, the Plan or the Disclosure Statement, and that could have been asserted by or on behalf of the Debtors or their Estates, whether directly, indirectly, derivatively or in any representative or any other capacity, against any Released Party; provided, however, that in no event shall anything in this Section 8.4(b) be construed as a release of any (i) Intercompany Claim or (ii) Person's fraud or willful misconduct, as determined by a Final Order, for matters with respect to the Debtors.*

(c)    **Releases by Holders of Claims and Interests**. *Except as otherwise provided in the Plan or the Confirmation Order, on the Effective Date, to the fullest extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, each Releasing Party, in consideration for the obligations of the Debtors and the other Released Parties under the Plan, the Distributions provided for under the Plan, and the contracts, instruments, releases, agreements or documents executed and delivered in connection with the Plan and the Restructuring Transaction, will be deemed to have consented to the Plan for all purposes and the restructuring embodied herein and deemed to forever release, waive and discharge all claims (as such term "claim" is defined in section 101(5) of the Bankruptcy Code), obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities (other than all rights, remedies and privileges of any party under the Plan, and the Plan Supplement and the contracts, instruments, releases, agreements and documents (including, without limitation, the Plan Documents) delivered under or in connection with the Plan), including, without limitation, any claims for any such loss such holder may suffer, have suffered or be alleged to suffer as a result of the Debtors commencing the Reorganization Cases or as a result of the Plan being consummated, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part on any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganization Cases, the Plan or the Disclosure Statement against any Released Party; provided, however, that in no event shall anything in this Section 8.4(c) be construed as a release of any (i) Intercompany Claim or (ii) a Person's fraud, gross negligence, willful misconduct, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, each as determined by a final order of a court of competent jurisdiction, for matters with respect to the Debtors.*

*Entry of the Confirmation Order will constitute the Bankruptcy Court's approval, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, of the releases in this Section 8.4(b) and (c), which includes by reference each of the related provisions and definitions contained herein, and further, will constitute the Bankruptcy Court's finding that such releases are (i) in exchange for the good and valuable consideration provided by the Debtors and the other Released Parties, representing good faith settlement and compromise of the claims released herein, (ii) in the best interests of the Debtors and all holders of Claims, (iii) fair, equitable, and reasonable, (iv) approved after due notice and opportunity for hearing, and (v) a*

*bar to any of the Releasing Parties asserting any claim released by the Releasing Parties against any of the Debtors and the other Released Parties or their respective property.*

*Except with respect to a Released Party that is a Debtor, notwithstanding anything to the contrary contained herein, except to the extent permissible under applicable law, as such law may be extended or interpreted subsequent to the Effective Date, nothing in the Confirmation Order or the Plan shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any Released Party, nor shall anything in the Confirmation Order or the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any Released Party for any liability whatever, including without limitation, any claim, suit or action arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Confirmation Order or the Plan exculpate any party from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against any Released Party.*

(d)     **Injunction**.  *Except as otherwise provided in the Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons who have held, hold or may hold Claims against or Interests in the Debtors or the Estates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from:  (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Reorganized Debtors, the Estates or any of their property, the Released Parties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons or any property of any such transferee or successor; (ii) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors, the Reorganized Debtors, or the Estates or any of their property, the Released Parties, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Reorganized Debtors, or the Estates or any of their property, the Released Parties or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; and (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of the Plan, the Plan Supplement and the contracts, instruments, releases, agreements and documents delivered in connection with the Plan.*

The Confirmation Order shall further provide that all Persons releasing claims pursuant to Section 8.4(b) or (c) of the Plan shall be permanently enjoined from and after the Confirmation Date from taking any actions referred to in clauses (i) through (v) of the immediately preceding paragraph against any party with respect to any claim released pursuant to such Section 8.4(b) or (c).

(e)     **Exculpation**.  *None of the Released Parties shall have or incur any liability to any holder of any Claim or Interest for any act or omission in connection with, or arising out of the Debtors' restructuring, including without limitation, the negotiation and execution of the Plan, the Plan Documents, the Reorganization Cases, the Disclosure Statement, the solicitation of votes for and the pursuit of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, including, without limitation, all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all prepetition activities leading to the promulgation and confirmation of the Plan except fraud, gross negligence or willful misconduct, each as determined by a Final Order, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts, each as determined by a final order of a court of competent jurisdiction.  The Released Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, solely to the extent that it would contravene Rule 1.8(h)(1) of the New York Rules of Professional Conduct or any similar ethical rule of another jurisdiction, if binding on an attorney of an Released Party, no attorney of any Released Party shall be released by the Debtors or the Reorganized Debtors.*

(f)     **Exclusive Jurisdiction**.  The Bankruptcy Court (and the United States District Court for the Southern District of New York) shall retain exclusive jurisdiction to adjudicate any and all claims or causes or action (i) against any Released Party, (ii) relating to the Debtors, the Plan, the Distributions, the New Common Stock, the Reorganization Cases, the Restructuring Transaction, or any contract, instrument, release, agreement or document executed and delivered in connection with the Plan and the Restructuring Transaction, and (iii) brought by the Debtors (or any successor thereto) or any holder of a Claim or Interest, regardless of whether such holder of a Claim or Interest is a Releasing Party; provided, however, that after the Effective Date, the terms of this provision shall not be applicable to the New Revolving Credit Agreement or the New Term Loan Agreement.

## 8.5     Objections to Claims and Interests

Unless otherwise ordered by the Bankruptcy Court, objections to Claims shall be filed and served on the applicable holder of such Claim not later than 120 days after the later to occur of:  (a) the Effective Date; and (b) the filing of the relevant Claim.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners: (x) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (y) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (z) by first

class mail, postage prepaid, on any counsel that has appeared on the claimant's behalf in the Reorganization Cases (so long as such appearance has not been subsequently withdrawn).

After the Confirmation Date, only the Reorganized Debtors shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to Claims. From and after the Effective Date, the Reorganized Debtors may settle or compromise any Disputed Claim without Court approval. Any Claims filed after the applicable Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtors or the Reorganized Debtors, unless the Person or entity wishing to file such untimely Claim has received prior Bankruptcy Court authority to do so.

### 8.6       Amendments to Claims

After the Confirmation Date, a Claim for which the applicable Bar Date has passed may not be filed or amended without the authorization of the Bankruptcy Court and, even with such Bankruptcy Court authorization, may be amended by the holder of such Claim solely to decrease, but not to increase, the amount or priority. Unless otherwise provided herein, any new or amended Claim filed after the Confirmation Date shall be deemed Disallowed in full and expunged without any action by the Debtors or Reorganized Debtors, unless the Claim holder has obtained prior Bankruptcy Court authorization for the filing.

### 8.7       Estimation of Claims

Any Debtor, Reorganized Debtor or holder of a Claim may request that the Bankruptcy Court estimate any Claim pursuant to section 502(c) of the Bankruptcy Code for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim for purposes of determining the allowed amount of such Claim at any time. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, any objecting party may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not necessarily exclusive of one another.

## ARTICLE IX

## EXECUTORY CONTRACTS

### 9.1       Executory Contracts and Unexpired Leases

(a)       On the Effective Date, all executory contracts and unexpired leases of the Debtors and/or the Estates shall be assumed by the Debtors and assigned to the Reorganized

Debtors pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, except: (i) any executory contracts and unexpired leases that are the subject of separate rejection motions filed pursuant to section 365 of the Bankruptcy Code by the Debtor before the entry of the Confirmation Order; (ii) contracts and leases listed in the "Schedule of Rejected Executory Contracts and Unexpired Leases" (the "**Schedule of Rejected Contracts**") to be filed by the Debtors with the Bankruptcy Court at least ten (10) days prior to the Confirmation Hearing (which shall provide for the rejection, as of the Effective Date, of such contracts and leases); (iii) all executory contracts or unexpired leases rejected under the Plan or by order of the Bankruptcy Court entered before the Confirmation Date; (iv) any executory contract or unexpired lease that is the subject of a dispute over the amount or manner of cure pursuant to Section 9.3 of the Plan and for which the Debtors or Reorganized Debtors, as the case may be, makes a motion to reject such contract or lease based upon the existence of such dispute filed at any time; and (v) any agreement, obligation, security interest, transaction or similar undertaking that the Debtors believe is not executory or a lease that is later determined by the Bankruptcy Court to be an executory contract or unexpired lease that is subject to assumption or rejection under section 365 of the Bankruptcy Code, which agreements shall be subject to assumption or rejection within thirty (30) days of any such determination. Any order entered after the Confirmation Date by the Bankruptcy Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

(b)     Listing a contract or lease in the Schedule of Rejected Contracts shall not constitute an admission by the Debtors or Reorganized Debtors that such contract or lease, including related agreements, is an executory contract or unexpired lease or that the Debtors or Reorganized Debtors have any liability thereunder.

(c)     Subject to subsection (a) above and Section 9.3 below, the Confirmation Order shall constitute an order of the Bankruptcy Court approving the assumption or rejection, as applicable, of executory contracts and unexpired leases the assumption or rejection of which is provided for in Section 9.1(a) of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code and such assumption or rejection shall be deemed effective as of the Effective Date.

**9.2          Bar Date for Rejection Damages**

If the rejection of any executory contract or unexpired lease under the Plan (including executory contracts and unexpired leases included on the Schedule of Rejected Contracts) gives rise to a Claim by the non-Debtor party or parties to such contract or lease, such Claim, to the extent that it is timely filed and is an Allowed Claim, shall be classified as an Other Unsecured Claim; provided, however, that the Other Unsecured Claim arising from such rejection shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors, their successors or properties, unless a proof of such Claim is filed and served on the Reorganized Debtors within thirty (30) days after the date of notice of the entry of the order of the Bankruptcy Court rejecting the executory contract or unexpired lease, which may include, if applicable, the Confirmation Order.

**9.3      Cure**

At the election of the Reorganized Debtors, any monetary defaults under each executory contract and unexpired lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on or as soon as reasonably practicable after the later to occur of (i) thirty (30) days after the determination of the cure amount and (ii) the Effective Date or such other date as may be set by the Bankruptcy Court; (b) by payment of the default amount in equal quarterly installments commencing on the Effective Date (or, if later, the date of determination of the cure amount) or as soon thereafter as practicable and continuing for one year (with simple interest payable with the final installment at the rate of 6% per annum and with principal prepayable at any time with no penalty or premium); or (c) on such other terms as agreed to by the Debtors or Reorganized Debtors and the non-Debtor party to such executory contract or unexpired lease.  In the event of a dispute regarding: (i) the amount of any cure payments; (ii) the ability of the Debtors to provide adequate assurance of future performance under the contract or lease to be assumed; or (iii) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made only following the entry of a Final Order resolving the dispute and approving assumption.  As referenced in Section 9.1(a)(iv) hereof, the Debtor shall have the right at any time to move to reject any executory contract or unexpired lease based on the existence of such a dispute.

## ARTICLE X

## CONDITIONS PRECEDENT TO
## CONFIRMATION AND CONSUMMATION OF THE PLAN

### 10.1      Conditions Precedent to Confirmation

Confirmation of the Plan is subject to:

(a)      the Disclosure Statement, which shall be in form and substance reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders, having been approved by the Bankruptcy Court as having adequate information in accordance with section 1125 of the Bankruptcy Code;

(b)      entry of the Confirmation Order; and

(c)      the Plan Documents, which shall be in form and substance reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders, having been filed in substantially final form prior to the Confirmation Hearing.

### 10.2      Conditions to the Effective Date

This occurrence of the Effective Date is subject to:

(a)      the Confirmation Order shall have been entered and shall have become a Final Order;

(b)     the certificates of incorporation and by-laws of the Reorganized Debtors shall have been amended or created as provided in the Plan;

(c)     either, in the Debtors' discretion:

(i)     the New Revolving Credit Facility, the terms of which shall be reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders, shall be effective by its terms; or

(ii)    (x) the termination of all commitments under the DIP Facility, payment in full in Cash of all outstanding obligations under the DIP Facility and cash collateralization, and return or backstopping of all letters of credit issued thereunder, and (y) a post-Effective Date revolving credit facility, other than the New Revolving Credit Facility, on terms reasonably satisfactory to the Debtors, the Prepetition Agent and the Required Consenting Lenders, shall be effective by its terms; and

(d)     the Plan Documents to be executed and delivered on or prior to the Effective Date shall be consistent in all respects with the Plan.

**10.3     Waiver of Conditions Precedent**

Other than the requirements that the Disclosure Statement Order and the Confirmation Order must be entered, neither of which can be waived, the requirement that a particular condition be satisfied may be waived in whole or part by the Debtors, with the consent of the Prepetition Agent and the Required Consenting Lenders (which consent shall not unreasonably be withheld), without notice and a hearing, and the Debtors' benefits under the "mootness doctrine" shall be unaffected by any provision hereof.  The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including, without limitation, any act, action, failure to act or inaction by the Debtors).  The failure of the Debtors to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

**10.4     Effect of Non-Occurrence of the Conditions to Consummation**

If each of the conditions to confirmation and consummation of the Plan and the occurrence of the Effective Date has not been satisfied or duly waived on or before the first Business Day that is more than sixty (60) days after the Confirmation Date, or by such later date as is proposed by the Debtors and approved by the Prepetition Agent and the Required Consenting Lenders and, after notice and a hearing, by the Bankruptcy Court, upon motion by any party in interest made before the time that each of the conditions has been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however,

that notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this section, the Plan shall be null and void in all respects, and nothing contained in the Plan shall:  (a) constitute a waiver or release of any Claims against or Interests in the Debtors; or (b) prejudice in any manner the rights of the Debtors, including (without limitation) the right to seek a further extension of the exclusive periods to file and solicit votes with respect to a plan under section 1121(d) of their Bankruptcy Code.

### 10.5    Withdrawal of the Plan

Subject to the consent of the Prepetition Agent and the Required Consenting Lenders, which consent shall not be unreasonably withheld, the Debtors reserve the right to modify or revoke and withdraw the Plan at any time before the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time up to the Effective Date.  If the Debtors revoke and withdraw the Plan: (a) nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or to prejudice in any manner the rights of the Debtors or any Persons in any further proceeding involving the Debtors; and (b) the result shall be the same as if the Confirmation Order were not entered, the Plan was not filed and no actions were taken to effectuate it.

### 10.6    Cramdown

Because certain Classes are deemed to have rejected the Plan, the Debtors will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.

## ARTICLE XI

## ADMINISTRATIVE PROVISIONS

### 11.1    Retention of Jurisdiction

(a)    **Purposes.**  Notwithstanding confirmation of the Plan or occurrence of the Effective Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(i)  to determine the allowability, classification, or priority of Claims upon objection by the Reorganized Debtors or any other party in interest entitled hereunder to file an objection (including the resolution of disputes regarding any Disputed Claims and claims for disputed Distributions), and the validity, extent, priority and nonavoidability of consensual and nonconsensual liens and other encumbrances;

(ii)  to issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or

implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Reorganization Cases on or before the Effective Date with respect to any Person;

(iii)  to protect the property of the Estates from claims against, or interference with, such property, including actions to quiet or otherwise clear title to such property or to resolve any dispute concerning liens, security interest or encumbrances on any property of the Estate;

(iv)  to determine any and all applications for allowance of Fee Claims;

(v)  to determine any Priority Tax Claims, Priority Non-Tax Claims, Administrative Claims or any other request for payment of claims or expenses entitled to priority under section 507(a) of the Bankruptcy Code;

(vi)  to resolve any dispute arising under or related to the implementation, execution, consummation or interpretation of the Plan and the making of Distributions hereunder;

(vii)  to determine any and all motions related to the rejection, assumption or assignment of executory contracts or unexpired leases, to determine any motion to reject an executory contract or unexpired lease pursuant to Section 9.1(a) of the Plan or to resolve any disputes relating to the appropriate cure amount or other issues related to the assumption of executory contracts or unexpired leases in the Reorganization Cases;

(viii)  to determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted in and prior to the closing of the Reorganization Cases, including any remands;

(ix)  to enter a Final Order closing the Reorganization Cases;

(x)  to modify the Plan under section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes;

(xi)  to issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Person, to the full extent authorized by the Bankruptcy Code;

(xii)  to enable the Reorganized Debtors to prosecute any and all proceedings to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or any other federal, state or local laws except as may be waived pursuant to the Plan;

(xiii)  to determine any tax liability pursuant to section 505 of the Bankruptcy Code;

(xiv)  to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(xv)  to resolve any disputes concerning whether a Person had sufficient notice of the Reorganization Cases, any applicable Bar Date, the hearing to consider approval of the Disclosure Statement or the Confirmation Hearing or for any other purpose;

(xvi)  to resolve any dispute or matter arising under or in connection with any order of the Bankruptcy Court entered in the Reorganization Cases;

(xvii)  to hear and resolve any causes of action involving the Debtors, the Reorganized Debtors or the Estates that arose prior to the Confirmation Date or in connection with the implementation of the Plan, including actions to avoid or recover preferential transfers or fraudulent conveyances;

(xviii)  to resolve any disputes concerning any release of a nondebtor hereunder or the injunction against acts, employment of process or actions against such nondebtor arising hereunder;

(xix)   to approve any Distributions, or objections thereto, under the Plan;

(xx)    to approve any Claims settlement entered into or offset exercised by the Debtors or Reorganized Debtors; and

(xxi)   to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order, or as may be authorized under provisions of the Bankruptcy Code;

provided, however, notwithstanding anything to the contrary in the Plan or the Confirmation Order, after the Effective Date, the Bankruptcy Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the New Revolving Credit Agreement, the New Revolving Credit Facility, the New Term Loan Agreement, any of the documentation related thereto or any other document in the Plan Supplement that has a choice of venue provision, which provision shall govern exclusively.

(b)    **Failure of the Bankruptcy Court to Exercise Jurisdiction**.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Reorganization Cases, then Section 11.1(a) of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having jurisdiction with respect to such matter.

### 11.2    Governing Law

Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply and except for Reinstated Claims governed by another jurisdiction's law, the rights and obligations arising under the Plan shall be governed by the laws of the State of New York, without giving effect to principles of conflicts of law.

### 11.3    Section 1125(e) of the Bankruptcy Code

The Debtors, the Prepetition Agent and the Consenting Lenders have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtors, the Prepetition Agent and the Consenting Lenders (and their respective affiliates, agents, directors, officers, employees, advisors, and attorneys each in its capacity as such) have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of the securities offered and sold under the Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or offer, issuance, sale, or purchase of the securities offered and sold under the Plan.

### 11.4    Time

In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

### 11.5    Retiree Benefits

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits (within the meaning of, and subject to the limitations of, section 1114 of the Bankruptcy Code), if any, at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtor had obligated itself to provide such benefits. Nothing herein shall: (a) restrict the Debtors' or the Reorganized Debtors' right to modify the terms and conditions of the retiree benefits, if any, as otherwise permitted pursuant to the terms of the applicable plans, non-bankruptcy law, or section 1114(m) of the Bankruptcy Code; or (b) be construed as an admission that any such retiree benefits are owed by the Debtors.

### 11.6    Amendments

(a)    **Preconfirmation Amendment**.  The Debtors may modify the Plan at any time prior to the entry of the Confirmation Order provided that the Plan, as modified, and the disclosure statement pertaining thereto meet applicable Bankruptcy Code requirements, <u>provided</u> that the Confirmation Order is in form and substance reasonably satisfactory to the Prepetition Agent and the Required Consenting Lenders.

(b)	**Postconfirmation Amendment Not Requiring Resolicitation**.  After the entry of the Confirmation Order, the Debtors may modify the Plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that the Debtors obtain approval of the Bankruptcy Court for such modification, after notice and a hearing, and provided further that the Confirmation Order is in form and substance reasonably satisfactory to the Prepetition Agent and the Required Consenting Lenders.  Any waiver under Section 10.3 hereof shall not be considered to be a modification of the Plan.

(c)	**Postconfirmation/Preconsummation Amendment Requiring Resolicitation**.  After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially and adversely affects the interests, rights, treatment, or Distributions of a Class of Claims or Interests, provided that:  (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain Court approval for such modification, after notice and a hearing; (iii) such modification is accepted by the holders of at least two-thirds in amount, and more than one-half in number, of Allowed Claims or Interests voting in each Class affected by such modification; and (iv) the Debtors comply with section 1125 of the Bankruptcy Code with respect to the Plan as modified, provided that the Confirmation Order is in form and substance reasonably satisfactory to the Prepetition Agent and the Required Consenting Lenders.

### 11.7	Successors and Assigns

The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Person.

### 11.8	Confirmation Order and Plan Control

To the extent the Confirmation Order and/or the Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtors and any party, the Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Bankruptcy Court) control the Plan.

### 11.9	Creditors' Committee

As of the Effective Date, the duties of the Creditors' Committee shall terminate, except with respect to the pursuit of or objection to any Fee Claims.

### 11.10	Termination of Professionals

On the Effective Date, the engagement of each Professional Person retained by the Debtors and the Creditors' Committee shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent their respective constituents with respect to applications for payment of such Fee Claims, and (b) nothing herein shall prevent the Reorganized Debtors from retaining any such Professional Person on or after the Effective Date.

### 11.11 Hart-Scott-Rodino Antitrust Improvements Act

Any New Common Stock to be distributed under the Plan to an entity required to file a Premerger Notification and Report Form under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, or any similar state laws or regulations, shall not be distributed until the notification and waiting periods applicable under such Act to such entity shall have expired or been terminated. In the event any applicable notification and waiting periods do not expire without objection, the Debtors or their agent shall, in their sole discretion, be entitled to sell such entity's shares of New Common Stock that were to be distributed under the Plan to such entity, and thereafter shall distribute the proceeds of the sale to such entity.

### 11.12 Post-Confirmation Reporting

After the Confirmation Date, the Reorganized Debtors shall file reports of their respective activities and financial affairs with the Bankruptcy Court on a quarterly basis, within thirty (30) days after the conclusion of each such quarterly period, until the earlier of the entry of a final decree closing each of the Reorganization Cases, or a Bankruptcy Court order converting or dismissing each of the Reorganization Cases. Any such reports may be made on a consolidated basis, and shall be prepared substantially consistent with (both in terms of content and format) the applicable Bankruptcy Court and United States Trustee guidelines for such matters.

### 11.13 Notices

All notices or requests in connection with the Plan shall be in writing and will be deemed to have been given when received by mail and addressed to:

(a)    if to the Debtors:

EnviroSolutions, Inc.
11220 Assett Loop, Suite 201
Manassas, VA  20109
  Attn.: Charles B. Fromm, Esq.

with copies to:

Willkie Farr & Gallagher LLP
787 Seventh Avenue
New York, New York  10019
  Attn.:   John C. Longmire, Esq.
            Shauna D. Jones, Esq.

(b)     if to the DIP Agent or the Prepetition Agent:

Deutsche Bank Trust Company Americas
60 Wall Street
New York, New York 10005
Telecopy:  (212) 797-5690
   Attn.:  Vincent D'Amore

with copies to:

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, New York  10017
   Attn.:   Sandy Qusba, Esq.
               Morris J. Massel, Esq.

(c)     if to the Creditors' Committee:

Squire, Sanders & Dempsey LLP
221 E. Fourth St., Suite 2900
Cincinnati, Ohio 45202
   Attn:    Stephen D. Lerner, Esq.

   –and–

Squire, Sanders & Dempsey LLP
30 Rockefeller Plaza
23rd Floor
New York, NY 10112
   Attn:    Sandra E. Mayerson, Esq.

### 11.14      Reservation of Rights

Except as expressly set forth herein, the Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order.  None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by the Debtors with respect to the Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claims or Interests prior to the Effective Date.

Dated: _____ __, 2010
      New York, New York

 

Respectfully submitted,

ENVIROSOLUTIONS OF NEW YORK, LLC
on behalf of itself and its affiliated Debtors

By: _____

    Name:  Eric Wallace
    Title:   President of the Debtors
            and Chief Executive Officer of
            EnviroSolutions Holdings, Inc.,
            EnviroSolutions, Inc. and
            EnviroSolutions Real Property
            Holdings, Inc.

## <u>EXHIBIT A</u>

### List of Debtors

9304 D'Arcy, LLC
Advanced Enterprises Recycling, Inc.
Ameriwaste, LLC
Ashland Investments, LLC
Big Run Coal and Clay Company, Inc.
BR Landfill, LLC
BR Property Holdings, Inc.
Capels Landfill, LLC
Curtis Creek Recovery Systems, Inc.
Doremus Avenue Recycling and Transfer, LLC
EnviroSolutions Holdings, Inc.
EnviroSolutions Leasing, LLC
EnviroSolutions Logistics, LLC
EnviroSolutions of New York, LLC
EnviroSolutions Real Property Holdings, Inc.
EnviroSolutions, Inc.
ETW, LLC
Furnace Associates, Inc.
Potomac Disposal Services of Virginia, LLC
Potomac Disposal Services of Virginia Real Property Holdings, LLC
River Cities Disposal, LLC
Solid Waste Transfer and Recycling, Inc.
STI Roll-Off, LLC

# EXHIBIT 3

## Ride-Through Unsecured Claims

**In re EnviroSolutions of New York, LLC, *et. al.*, Case No. 10-11236**

**Ride-Through Unsecured Claims**

| Creditor | Pre-Petition Claim Per Debtors' Books and Records[1] |
|---|---|
| Ace Uniform Services, Inc. | $681 |
| Automatic Data Processing / eTIME | $15,733 |
| All Doors, LLC | $1,430 |
| Altmed | $435 |
| Atlantic Fire (Winkler, Brian) | $105 |
| The Auto Barn, Inc. | $1,535 |
| BC Consultants | $10,377 |
| Ben Dyer Associates, Inc. | $1,614 |
| Campbell, Patrick | $1,025 |
| Capgemini | $1,122 |
| Cintas Corp. | $9,833 |
| Concorde, Inc. | $3,492 |
| Delmarva Grounds Maintenance, Inc. | $567 |
| Duffield Hauling, Inc. | $5,233 |
| Durrett-Sheppard Steel Co., Inc. | $2,500 |
| Fairfax County Landfill | $92,000 |
| Fleet Care | $7,835 |

---

[1]    The Debtors hereby reserve their rights to revise the amounts listed herein upon further review of their books and records with respect to reconciliation of, among other things, amounts that have already been paid.

| Creditor | Pre-Petition Claim Per Debtors' Books and Records[1] |
|---|---|
| Fleet Pride, Inc. | $6,949 |
| Golder Associates Inc. | $10,367 |
| Grainger | $878 |
| Green Tree Consulting, Inc. | $1,956 |
| Hatch Mott MacDonald | $547 |
| Hudson Environmental Services, Inc. | $9,745 |
| Idealarc / Verizon Ads / Yellow Pages | $5,115 |
| Ison Welding LLC | $5,162 |
| J.A. Rodriguez Electric Company | $2,476 |
| JD Enterprises | $925 |
| James River Equipment | $4,418 |
| John Boy Co., Inc. | $269 |
| Kenvirons, Inc. | $16,844 |
| Konecranes | $426 |
| Labor Finders of Virginia, Inc. | $5,820 |
| Lecos & Associates | $726 |
| Manor II Electric, Inc. | $1,075 |
| Midatlantic Machinery Inc. | $8,792 |
| Murray Trucking | $5,044 |
| NUE Services | $501 |
| Pabst Enterprises Equipment Co., Inc. | $2,461 |
| PCFA of Warren County | $66,909 |

| Creditor | Pre-Petition Claim Per Debtors' Books and Records[1] |
|---|---|
| Princeton Public Affairs | $500 |
| Quarles Fuel | $5,946 |
| REI Consultants, Inc. | $590 |
| Renegade Rolloff & Trucking Service | $975 |
| RSC Equipment Rental | $260 |
| Tarney Exterminating Co. | $3,008 |
| Taylormade Engineering Services, LLC | $2,500 |
| Total Auto Parts | $167 |
| Unity Disposal / Waste | $263 |
| Vukoder, William | $12,349 |
| Wastequip | $10,806 |
| William A. Hazel, Inc. | $14,632 |
| William N. Mason, Inc. | $3,635 |
| **Total** | **$368,549** |